JAMES DOWNING ET AL. V. AUGUSTINE DIAZ ET AL.

No. 2434.

1.   **Case Adhered to—Town Grants Under Laws of Spain.**—Railway v. Jarvis, 69 Texas, 527, adhered to and the same applied to the town of Guerrero established by the same commission.

2.   **Town Charter—Evidencing Rights, etc., of Town and its Inhabitants.** The paper certified from the Land Office from copies there deposited by J. L. Haynes, under Act of Legislature of April 24, 1871, is in effect the charter of the town, and at the same time the evidence of the rights of the town to lands set apart for public use, as well as the evidence of the right of each settler to the land then designated and granted to him.

3.   **Same—A Survey.**—The locality of the several porcions granted to individuals may be definitely ascertained from the instrument, as well as the relation of land granted to one to that granted to another.

4.   **Same.**—The record of the *general visit* shows that it throughout, from day to day, was executed with all the formalities required at that time (1767), and bears evidence that the protocol from which taken was a true and faithful record at the time the town of Guerrero was established as a Spanish municipality.  The proceedings began early in July, 1767, and ended August 20 of that year.

5.   **Same—References to the General Visit.**—Many papers regularly executed in the latter part of the last century and early part of this are collected in the transcript filed by Haynes in the Land Office and refer to the paper known as the *general visit*, and recognize particular appropriations of land as thereby made.

6.   **Same.**—Also is a copy of proceedings beginning February 20, 1801, asking a resurvey of lands as allotted in the *general visit*.  In reply the Governor appointed Cordente to make such survey, and in March the record of the *general visit* was furnished him.  Making the resurvey according to the original, the document was sent with his report to the Governor, who finding it correct approved it November 18, 1801.  It does

not appear when the papers known as the *general visit* were returned to Guerrero. March 3, 1831, under an order of the Governor dated October 15, 1830, proceedings were taken reciting the restoration of the papers, formally restoring them as being protocoled, they may perpetuate the evidence of possession of the first settlers. This last entry including all the parts restored were duly certified, and were by Haynes, under act of the Legislature, filed in the Land Office.

7. **Documents to be Collected by Haynes.**—The law directing Haynes' acts required the collection of every "act, charter, or grant affecting the lands on the east side of the Rio Grande." It did not include a statement or history by an official of the town of Guerrero, giving his opinion of the details and ownership of the several parts of the land included in the town grant.

8. **Archives.**—Documents evidencing acts of officers of the Spanish government in making grants of land, in the adjustment of boundaries of land granted, ascertainment of unappropriated lands and like matters pertaining to the lands on the east side of the Rio Grande, the documents being archives at Guerrero they were properly reported by Haynes and filed in the General Land Office, where they also became archives.

9. **Archives—Legislature Can Define Them.**—It is with the Legislature to determine what shall become an archive.

10. **Absence of Original.**—It appearing that neither the protocol nor the original could be legally surrendered by their custodians to individuals to be taken to another county to be used in evidence, the mode of proof provided by the archived copy should be admitted.

11. **Discussion of the Archives at Guerrero.**—It appears that by resolution of the government of date October 15, 1830, the person who made the order of March 3, 1831, and made the record from which the transcript in the Land Office was taken, was directed to place in a book for preservation, as are matrices when said to constitute a protocol, the copies which the governor intended should be preserved as evidencing rights public and private conferred by the acts of the sub-delegates and persons acting under their orders. This constituted the document archives. We must presume in their favor from it being the act of a former government by officials presumably knowing the laws then in force.

12. **Constitutional Law.**—Section 4, article 13, of the Constitution does not apply to titles evidenced by records in the Land Office at the time, as were titles evidenced by the Haynes report.

13. **Inchoate Right—Presumptions.**—The paper (being proceedings establishing the town and determining by a survey the rights of the town and its settlers and report of possession admitted of the several parts) upon its face did not purport to evidence an inchoate right; but if it did this would not furnish sufficient reason for excluding it as evidence of some right and as a description of the land; and confirmation ought to be presumed, if necessary, from the long and continuous possession (seventy-five years before trial) shown under claim based on the proceedings evidenced by the paper.

14. **Copies Remote from Original — Ancient Copies.**—It must be conceded that the record in Guerrero now found in the archives of that time was made in March, 1831, and it is proper to hold from what appears that it was copied from the papers there filed in 1767, subsequently removed and not returned until some time after October, 1830. This record, so far as it contains the proceedings of the sub-delegates, would be what is termed in the Spanish law a *traslado*, which is a copy taken by a notary from the original, or a subsequent copy taken from the protocol. But so far as the record contains the proceedings by Benevedes it would be, so far as the record shows, what is the original, because the first copy taken from the protocol, or at most a subsequent copy taken from that paper. A *traslado* if ancient is entitled to full

faith * * * in cases in which the property passed by it is possessed under the right conferred by it for the period of thirty years.

15. **Same.**—Such ancient copies in any event would be competent to show boundary of the tract held and grounds of holding it, accompanied by long continued possession.

16. **Exchange of Lands.**—An exchange of the surveys granted to two settlers, each taking the land granted the other, may be presumed from long possession under such exchange.

17. **Legislative Confirmation.**—The Act of February 10, 1852, confirmed porciones No. 35 and No. 37, lying on both sides of survey No. 36, the survey in controversy and depending upon the same acts of the Spanish authority. This evidences a claim of equitable ownership in owners of the No. 36 so as to protect it against location.

18. **Res Adjudicata.**—Action by heirs of Joaquin Cuellar for land known as porcion No. 36 of outlots in town of Guerrero. It appears to have been granted to Jacinto Cuellar. The two grantees exchanged lots. One of the plaintiffs, Francisco Cuellar, for himself and coheirs sued the State to establish title in the No. 36. He sued as heir of Jacinto Cuellar. The State recovered in the action. The State v. Cuellar, 47 Texas, 295. In this suit the defendants set up the suit against the State as a defense. *Held:*

1. The court properly excluded the proceedings, as this suit is not brought as heirs of Jacinto Cuellar, but in another right.

2. Such judgment could not bar others than Francisco, the plaintiff, who could at least defeat the locations of the defendants upon the land of which they (the plaintiffs) were in possession, and of which they were equitable owners.

APPEAL from Webb. Tried below before Hon. J. C. Russell. The opinion gives a statement.

*W. Showalter* and *J. O. Nicholson,* for appellants.—1. The transcript of the "general visit" to the town of Revilla (now Guerrero), Mexico, admitted in evidence, taken in connection with the certificates of the Spanish translator of the General Land Office and Land Commissioner and Jesus P. Vela, first constitutional alcalde of Guerrero (formerly Revilla), Mexico, dated September 9, 1871, and Santiago Vela, dated March 3, 1831, show that the said transcript so admitted in evidence was a translated copy taken from a copy in the Spanish language filed in the General Land Office by John L. Haynes, State agent, etc., and that the copy filed in the General Land Office by said John L. Haynes was taken from a copy of what was claimed to be the original testimonio of said "general visit" left at said town of Guerrero (formerly Revilla) in the year 1767, by the commissioners appointed by the Viceroy of Mexico to make said visit, and the fact that it had been obtained and filed in the General Land Office by John L. Haynes under an act of the Legislature of Texas, which did not prescribe that the same when filed in the General Land Office shall constitute an archive thereof, did not authorize its introduction in evidence as an archive of the General Land Office. Rev. Stats., arts. 58, 2252, 2253; Pasch. Dig., arts. 526, 527; The State v. Cuellar, 47 Texas, 305, 306; Paschal v. Perez, 7 Texas, 356–364.

2. The certified translated copy of the transcript called the "general visit," offered and admitted in evidence, only purports to be a third copy of what is claimed to be the original "testimonio" relating to said "general visit," and delivered by the commissioners who made said visit to the first settlers of Revilla (now Guerrero) as evidence of their possession; and there being no proof offered of the loss of the original testimonio, or of the original protocol, or of the inability of the plaintiffs to produce either one, or the other in court, and in the absence of any evidence as to the genuineness of either the alleged copy now on file in the General Land Office or as to the genuineness of the alleged copy which purports to have been made in 1831, or as to the genuineness of what is alleged to be the original testimonio of the "general visit," the same was not admissible in evidence, even though it shall be held to be an archive in the General Land Office. Rev. Stats., arts. 58, 2252, 2253; The State v. Cardenas, 47 Texas, 286; The State v. Cuellar, 47 Texas, 305, 306; Paschal v. Perez, 7 Texas, 356–364; Edwards v. James, 7 Texas, 377, 378; De Leon v. White, 9 Texas, 609; Word v. McKinney, 25 Texas, 267–269.

3. The certificate of Jesus P. Vela, first constitutional alcalde of Guerrero, given September 9, 1871, and attached to what purports to be a second copy of the original testimonio of the act of "general visit," does not show upon its face that the same was an archive in his office or that he was the legal custodian of the same, and in the absence of any evidence that he was authorized to give a certificate as to the correctness of the transcript now on file in the General Land Office, the certified translated copy from the General Land Office was not admissible in evidence as a copy of an archive of the General Land Office. Pasch. Dig., art. 5826; Rev. Stats., arts. 58, 2252, 2253; The State v. Cardenas, 47 Texas, 286–288; The State v. Cuellar, 47 Texas, 305, 306; Paschal v. Perez, 7 Texas, 356–360.

4. The Spanish translator of the General Land Office and the Commissioner thereof are only authorized to give certified copies or certified translated copies of the records and files of said office; and the recitals of said parties in their certificate attached to what purports to be a translated copy of the original testimonio of "general visit," that the alleged Spanish copy "is duly authenticated by the alcalde of Guerrero, and was deposited in this office on the 1st day of April, 1872, by John L. Haynes, State agent," etc., and "I do further certify that the document to which reference is made in said certificate and deposited by John L. Haynes, State agent, are proper archives of this office under the provisions of section 5 of article 57 of the Revised Statutes of Texas," are not sufficient in the absence of any certificate of John L. Haynes or any other evidence going to show that said Spanish copy now on file in the General Land Office is a copy obtained by said John L. Haynes from the authorities of the town of Guerrero, Mexico, by

virtue of any law of the State of Texas. Pasch. Dig., art. 5826; Rev. Stats., arts. 2252, 2253; The State v. Cuellar, 47 Texas, 303; Buford v. Bostick, 50 Texas, 375.

5. Plaintiffs base their claim to the land in controversy by virtue of a grant made to Jacinto Cuellar by the "general visit" in the year 1767, and the court admitted the certified translated copy of the document styled the "general visit," or "act of foundation of the town of Revilla," in evidence in support of plaintiffs' claim; therefore all that portion of said transcript, not being a part of the proceedings of said "general visit" nor of the act founding the town of Revilla, but being, as it is, recitals of persons regarding proceedings not relevant to the issues involved in this suit and of judgments and decrees of alcaldes and other officers, the same were not admissible either as archives of the General Land Office of Texas nor as properly authenticated copies of archives or judgments and decrees of a foreign government. The State v. Vela, 47 Texas, 326.

6. The certified translated copy of the transcript called the "general visit" does not purport to grant any lands in fee, but only to give an inchoate right; and in the absence of any evidence to show that said inchoate right had ever been perfected into a perfect title, or that plaintiffs' claim to the land in controversy had ever been recognized by the government of Texas, the same was inadmissible to prove title in plaintiffs and should have been excluded. Paschal v. Perez, 7 Texas, 343; De Leon v. White, 9 Texas, 549; Titus v. Kimbro, 8 Texas, 210; Words v. McKinney, 25 Texas, 268; Wood v. Welder, 42 Texas, 408; State v. Cardenas, 47 Texas, 290.

7. The defendants having pleaded a general denial, and also a special plea of *res adjudicata*, and the evidence having shown that the parties plaintiff were the identical parties plaintiff in a certain cause styled Francisco Cuellar v. The State of Texas, which was a suit against the State of Texas for confirmation of the title of the identical land involved in this suit, and that in said cause final judgment was rendered in favor of the State, and that afterward the State conveyed to defendants by patents all its right and title to the land involved in this suit, and the fact that the plaintiffs sued as heirs of Jacinto Cuellar in the former suit, and as the heirs of Joaquin Cuellar in this suit, was not sufficient to authorize the court to exclude the judgment roll of the former suit when offered as evidence in support of said plea of *res adjudicata*, because plaintiffs are precluded from claiming as heirs of Joaquin Cuellar in this suit when they might have urged said claim in the former suit, and their failure to urge said claim in a former suit estops them from urging the same against the State or its privies in any subsequent action. Pasch. Dig., arts. 7068–7076; Russell v. Farquhar, 55 Texas, 356–361; Read v. Allen, 56 Texas, 190, 191; Frankland v. Cassaday, 62 Texas, 419–422; Claflin v. Fletcher, 20 Meyers' Fed. Dec., sec. 663; Bank v.

Eldred, 20 Meyers' Fed. Dec., sec. 678; Packet Co. v. Sickles, 20 Meyers' Fed. Dec., secs. 681, 682; Steamboat Line v. Lyan, 20 Meyers' Fed. Dec., sec. 683; Wells' Res Adjudicata and Stare Dec., secs. 6, 10, 63, 64, 200–202, 249, 283–285, 339, 427.

8. The paper title relied on by plaintiffs emanated from the Spanish government, and was only an inchoate, incipient, or imperfect title, which required an additional exercise of the granting power before the fee could pass; we therefore hold that it was not sufficient to imply ownership, either against the sovereign or against the individuals, and that being an imperfect title which emanated from a former government, and which had not only never been recognized, but both impliedly and expressly repudiated by the State of Texas, it formed no foundation for an action and can have no standing in our courts.

On the question of certainty of description required in order to sever a grant of land from the public domain: The State v. Cuellar, 47 Texas, 297–300; Lecompte v. United States, 2 How., 126–128; Slidell v. Grandjean, 3 U. S., 438, 440; Chinowith v. Haskell, 3 Pet., 98; Blake v. Doherty, 5 Wheat., 362, 363.

Upon the point that no standing can be given in a court of justice to inchoate claims originating under a former government until recognized by the political authorities of the existing sovereignty: Paschal v. Perez, 7 Texas, 366–371; Reily v. Board of Land Com., Dall., 381; Smith v. The Republic, Dall., 472; Jones v. Borden, 5 Texas, 412, 413; Pasch. Dig. of Dec., secs. 7051–7061; Choteau v. Eckhart, 2 How., 375; United States v. Lawton, 5 How., 29; Menard Heirs v. Massey, 7 How., 306–307.

Upon the question of inchoate or imperfect Spanish titles: Paschal v. Perez, 7 Texas, 368–371; Hancock v. McKinney, 7 Texas, 446–455; Paschal v. Dangerfield, 11 Texas, 580, 581; Paschal v. Dangerfield, 37 Texas, 302–304; The State v. Cuellar, 47 Texas, 297–306; The State v. Cardenas, 47 Texas, 286; Gonzales v. Russ, 7 U. S., 705; Menard Heirs v. Massey, 8 How., 302–315; United States v. Wiggins, 14 Pet., 349–352; United States v. Kingsley, 12 Pet., 480–487; 2 White's Land Laws of Mexico and Texas, p. 50; Royal Regulation of October 15, 1754, 2 White's Land Laws of Mexico and Texas, pp. 62–66; Royal Ordinance December 4, 1786, 2 White's Land Laws of Mexico and Texas, pp. 67–69; Hall's Mexican Law, secs, 11, 15, 16, 23, 28–30; Hall's Mexican Law, secs. 47, 84, 85, 87.

9. Upon the presumption of a grant of the fee to land from the sovereignty of the soil: Paschal v. Dangerfield, 37 Texas, 301–305; Biencourt v. Parker, 27 Texas, 563–565; Walker v. Hanks, 27 Texas, 536; Yancey v. Norris, 27 Texas, 48; Taylor v. Watkins, 26 Texas, 688; Smith v. Power, 23 Texas, 33–35.

Upon the question of the presumption of a grant being rebutted by the evidence: Paul v. Perez, 7 Texas, 342; Yancey v. Norris, 27

Texas, 48, 49; Pasch. Dig. of Dec., secs. 11421–14163; Ricard v. Williams, 7 Wheat (U. S.), 109; Jackson v. Schounmaker, 7 Johns, 14, 15.

Upon question of amount of land which may be claimed under a prescriptive title: Charle· v. Saffold, 13 Texas, 111–114; Dangerfield v. Paschal, 11 Texas, 582; Wofford v. McKinna, 23 Texas, 36; Lambert v. Wier, 27 Texas, 365; The State v. Cuellar, 47·Texas, 297–299; Lecompte v. United States, 11 How., 126–128; Slidell v. Grandjean, 3 U. S., 431–440; Chinowith v. Haskell, 3 Pet., 98; Blake v. Doherty, 5 Wheat., 362, 363.

*McCampbells & Welch*, for appellees.—1. The certified translation of the act of the "general visit" from the Land Office was a translation of a Land Office archive.

Said archive was a copy of the original protocol and deposited by Act of the Legislature approved April 24, 1871; was *prima facie* evidence of title, and sufficient to establish same in grantees without accounting for the testimonio or having the same issued.

As to a certified copy of a protocol not requiring ·search for testimonio: Sheppard v. Harrison, 54 Texas, 91; Clay v. Holbert, 14 Texas, 189; Reus v. Chambers, 15 Texas, 586.

2. A judgment roll which shows no filing or identity of the petition, and affirmatively shows that the final judgment therein recited is void upon its face for want of jurisdiction, is not admissible in evidence.

3. The remaining propositions of the appellants rest upon the assumption that only an ·imperfect grant was shown by appellees. In face of seventy-five years' possession, undisturbed, under three distinct sovereignties, survey absolute, visible seizin, and symbolical delivery of turf and twig, all shown in the evidence herein, we do not feel called upon to answer such assumption.

We herein do say, in the shape of a proposition on which this case should be affirmed, even if the "general visit" should be excluded, that long continued possession, paying of taxes and occupancy, acquiescence of three sovereignties in such visible appropriation, under notorious claim of title, are sufficient to support presumption of a grant.

It was admitted that the parties plaintiff had paid taxes on said porcion from 1850 to 1886 inclusive.

It is a matter of history, recognized by the preamble of the law of 1871, seeking to procure evidence of the extent of the grants, that the original settlers and their descendants of the towns of Reynosa, Camargo, Mier, and Guerrero have remained undisturbed and in their possessions under the respective governments of Spain, Mexico, and Texas.

·· STAYTON, CHIEF JUSTICE.—This is an action of trespass to try title, brought by appellees, who are shown to be entitled to take by in-

heritance from Joaquin Cuellar. They allege that the land in contro-
versy, known as porcion No. 36, was granted to Jacinto Cuellar by the
Spanish government in the year 1767, and that he gave it in exchange
to Joaquin Cuellar for porcion No. 35, which was originally granted
to the latter at the same time the land in controversy was granted to
Jacinto. Jacinto and Joaquin Cuellar were brothers, and both died
leaving descendants.

Appellants claim through patents dated 9th and 20th of August, 1884,
covering the same land embraced in porcion No. 36, and located by vir-
tue of land certificates that issued since the adoption of the present
Constitution of this State.

The cause was tried without a jury, and the court found the follow-
ing facts:

"1. Plaintiffs and those whose estate they have been in actual con-
tinuous possession of, with improvements of the porcion of land de-
scribed in the petition, and within the knowledge of living and credi-
ble witnesses who have testified herein, for at least seventy-five years
prior to the institution of this suit, and claiming and holding under
well defined boundaries.

"2. Said plaintiffs have so claimed and possessed the said porcion
of land by virtue of and under what is termed an act of "general visit"
of 1767, archived under the Spanish government in that year and rec-
ognized by it for over fifty years, and respected and acquiesced in by
the Mexican government for twenty-two years, and a copy of which act
was filed in the General Land Office of Texas about 1871, by virtue of
an Act of the Legislature of Texas, entitled, 'An Act to provide for
the obtaining and transcribing of the several acts or charters founding
the towns of Reynosa, Camargo, Mier, and Guerrero, in the Republic
of Mexico, and of Laredo in Texas, and making an appropriation for
that purpose,' approved April 24, 1871, and same constitutes now an
archive of said General Land Office under title 7, article 57, subdivision
5 of the Revised Statutes of Texas.

"3. Under said act porcion 35 was originally adjudicated to Joaquin
Cuellar, and porcion 36 was originally adjudicated to Jacinto Cuellar;
but I find from a preponderance of evidence that for at least seventy-
five years the heirs and lineal descendants of Joaquin Cuellar have
been in peaceable, adverse, and undisturbed possession of porcion 36,
and the heirs and assignees of Jacinto Cuellar have been in adverse,
peaceable, and undisturbed possession of porcion 35, and these porcions
are contiguous.

"4. Plaintiffs are the lineal descendants of Joaquin Cuellar and in-
herit all his right, title, and interest in and to said porcion No. 36.

"5. I find that at the time of the location, surveys, and patenting
of the lands claimed by defendants herein, porcion No. 36, upon which
their said locations were made and patents subsequently obtained, was

equitably owned by plaintiffs under color of title from the sovereignty of the State, and the evidence of said appropriation was in the General Land Office, and also evidenced by the occupation of the owners of said porcion who were and are the plaintiffs herein. I find that the defendant James Downing had actual notice of same as a tenant of plaintiffs at the time he made his locations.

"6. The lands claimed by defendants are within and upon porcion numbered 36, owned and possessed by plaintiffs as shown by the survey in evidence.

"7. I find that the defendants herein respectively are the patentees of the land described in the answer, and numbered respectively 91 and 92 in the name of James Downing, and 410 in the name of W. Von Rosenberg, and same from the certificates recited therein were patented and the locations thereunder made since the Constitution of 1876 went into effect."

As conclusions of law the court found:

"1. Under the first, second, and fourth conclusions of fact I find that plaintiffs have a good and perfect title to porcion of land numbered 36, and they are entitled to decree quieting them in their title and possession, and defendants must be enjoined from claiming any part of the same or further asserting title by virtue of their patents, which are null and void, and must be delivered up for cancellation.

"2. Under the third conclusion of fact an exchange of porciones 35 and 36, between Joaquin Cuellar and Jacinto Cuellar, is presumed.

"3. Under the fifth conclusion of fact defendants can not recover herein in the nature of plea in reconvention for possession of the lands described in their patents, as said patents are null and void."

On these findings a judgment was rendered for the plaintiffs.

The questions raised relate to the admission and rejection of evidence and to the sufficiency of the evidence to sustain the presumptions indulged by the court.

The land in controversy was formerly within the jurisdiction of the town of Guerrero, once known as Revilla.

A paper was offered in evidence which was a certified copy from the General Land Office of a paper therein filed by J. L. Haynes in pursuance of the Act of April 24, 1871. Pasch. Dig., art. 5826. That paper was by Haynes, in pursuance of the act referred to, obtained from the archives of the town of Guerrero, and purports to be a copy of the proceedings of a sub-delegation composed of the same persons, acting under the same authority and for the same purpose, as shown in the case of Railway v. Jarvis, 69 Texas, 527.

In that case the law under which Haynes was acting when he obtained and filed in the General Land Office the paper from which the copy record in this was taken, as well as a statement of the official character of the persons whose acts it purports to evidence, and the purpose of the

visit of the sub-delegation, will be found, as well as a statement of the general course of procedure.

The paper offered in evidence in this case bears the same relation to the town of Guerrero, its inhabitants, and property rights as did the paper offered in evidence in the case before referred to, to the town of Laredo, its inhabitants, and property rights. It is in effect the charter of the town, and at the same time the evidence of the right of the town to lands set apart for public use, as well as the evidence of the right of each settler to the land there designated and granted to him. Both towns embraced lands on each side of the Rio Grande. The locality of the several porcions granted to individuals may be definitely ascertained from the instrument as well as the relation of land granted to one to that granted to another. The recitals in reference to porcions 35, 36, and 37 are as follows:

"35. On the same course and river bank they measured thirty-four cords, which make 1700 Mexican varas, which, with as many more on the opposite head and 20,000 on the sides, adjust a porcion; they identified it, and being applied for by Don Joaquin Cuellar it was left to him.

"36. They measured an equal number of cords on the same course, which makes 1700 Mexican varas, and with as many more on the opposite head and 20,000 on the sides, adjust a porcion; which they marked out complete, and being applied for by Don Jacinto Cuellar it was left to him like the preceding one.

"37. On the same course and river bank they measured the same cords, which complete 1700 Mexican varas, with as many more on the opposite head and 20,000 on the sides, adjust a porcion; which they marked out, and being applied for by Bartolomei Cuellar it was left to him;" and in this manner proceeded the designation of porcions until all the settlers received lands.

There is evidence of much detail in the whole transaction from its inception to the close, with strict conformity with the laws then in force.

After the usual allotments were made, the sub-delegates made the following declaration: "We hold as adjudicated the sixty-nine porcions of land partitioned to the residents and settlers of this town and its jurisdiction as the surveyors declare they have done with the assistance, at the time of surveying them, of some interested parties. * * * For the full execution of their contents a *testimonio thereof shall be left to the captain or justice to be archived for the protection of the parties so soon as he shall effect the taking of possession,* when he shall establish conspicuous and lasting monuments in every porcion and sitio assigned, in order that the possessor thereof may prevent all damage and injury to third parties."

Christebal Benz Benavides, "captain or justice," was required to place persons to whom lands had been allotted in possession, and after having done so to attach the original evidence of his acts to the testi-

monio left by the sub-delegates and the same to archive for the protection of all persons interested, and also to forward to the sub-delegates a testimonio of his proceedings. In pursuance with the order Benavides placed the settlers in possession of the lands that had been allotted to them, but possession seems not to have been given in the order in which allotments were made, and in some instances exchanges made between persons after allotment but before judicial possession was given were recognized as valid in the act of possession.

In the proceedings by him the following appears: ."(29) Next they proceeded to the place called Las Animas, under which patronage these porcions of land are contained; the first belongs to Don Jacinto de Cuellar; (30) the second to Don Joaquin Cuellar; (31) and the third to Don Bartolomei de Cuellar; when, making the proper demonstrations as before, the said Jacinto appeared personally representing the porcions of his father and brother adjoining his own tract; possession was delivered to him in the name of all and he received it in proper conformity as the former ones, upon the stated conditions, the said witnesses being present." .

Possession preceding and following this was given to the same persons to whom the allotments preceding and following were made. He also gave possession of lands to the mission and lots in the town to settlers, as provided in the orders of the sub-delegates, and closed the record of his acts by a declaration that the instrument then executed was such a record made for their perpetuation, of which he ordered a testimonio "be made item by item, literally, which being done shall be forwarded to his lordship Brigadier Don J. Fernando Palacio, governor and vice captain-general of this colony, in obedience of orders, and that this original be attached to the testimonio of partition."

To give a full statement of the contents of the paper offered in evidence as a copy of that known as the "general visit" would consume more time and space than can now be given to that purpose; but we may say that it, throughout, from day to day, was executed with all the formalities required at that time, and bears evidence that the protocol from which taken was a true and faithful record of what occurred at the time the town of Guerrero was established as a Spanish municipality. The proceedings thus evidenced began early in July, 1767, and ended on August 20th of that year.

. Following the papers before referred to in the transcript filed in the General Land Office by Haynes, from which all the copies offered in evidence were taken, are many papers, some of which appear to have been taken from protocols executed in all respects as the laws then in force required during the latter part of the last century and early in the present, which refer to the paper known as the "general visit" and recognize particular appropriations of land as thereby made. One of these was an application made by Jose Miguel de Cuellar, of date Feb-

ruary 20, 1801, directed to the governor of the province, in which he made known to the governor that he had succeeded to the right of his father Bartolomei Cuellar, to the porcion of land set apart in the "general visit," which was porcion No. 37, and complaining that his brother Joaquin Cuellar had shut him off from the river on the south by an inclosure, and thereby prevented his stock from getting water, and praying that the governor appoint some competent person "who shall in accordance with the said acts of the 'general visit,' run the line as it appears that said porcion was given and bounded, and that it be surveyed and run in accordance with the tenor of said act, fronting on the river and with its depth on the established courses as they appear in the proceedings of partition of lands, in order that with security I may obtain a watering place on my property."

In reply to this petition the governor made the following order: "I confer commission upon Don Francisco Cordente, who will, as is asked by this party, conform himself to the 'general visit,' with citation of adjoining owners, and declare the boundaries of the porcions of land referred to, and cause mortar and stone monuments to be erected thereon."

On March 9th of same year Cordente caused an order to be sent to the custodian of the writings known as the "general visit," requiring them to be sent to him in order that he might duly discharge his commission, which embraced other land matters beside that already referred to, and in pursuance of this order it appears that they were sent, and that Cordente then re-established the lines and corners of those porcions as were they at first, in which all interested parties concurred; and on the 14th of the same month the papers were remitted to the governor, who on November 18, 1801, finding the work correct, approved it; but it does not appear when the papers known as the "general visit," properly archived in Guerrero, but delivered to Cordente, were returned to their proper archive.

The act preceding the paper which purports to be a record of the proceedings of the sub-delegates and of Benavides, who was empowered to establish lines and corners of porcions and to give possession in 1767, is as follows:

"In the city of Guerrero, in the free State of Tamaulipas, on the third day of the month of March, eighteen hundred and thirty-one, I, Santiago Vela, constitutional alcalde, acting with assisting witnesses in default of a notary, there being none in terms of law. In view of the resolution by his excellency the Governor of the State, agreeably to his counsel, dated the 15th of October, in the year 1830, last past, upon the restoration of the proceedings or acts of visit of this city; I order that it takes effect in all its parts, copying in the form of testimonio the said documents, in order that being protocoled they may perpetuate

the evidence of possession of the first settlers of this city.   This I have determined by this decree.   Signed by me, with my assisting witnesses, in the prescribed form, which I certify.

"Assisting witnesses:            [Signed]        "SANTIAGO VELA.
    "JOSE MA. FLORES,
    "FLORENCIO VILLAREAL."

Then follow the entire proceedings of the sub-delegation and other papers referred to, which were properly authenticated and delivered to the State's agent on September 9, 1871, by whom they were filed in the General Land Office, and certified copies therefrom were used on the trial of this cause.

Haynes, with the papers before referred to and embraced in the transcript certified by the proper authorities at Guerrero, also filed a statement, which purported to have been made on February 4, 1831, but by what authority is not shown, showing to whom lands were granted by the "general visit," who owned them at time statement was made, what lands were granted in 1784, and what lands were divisioned in the year 1810, or under the colonization law; and on this it appeared that porcion 35 was granted to Jacinto Cuellar, 36 to Joaquin Ceullar, and 37 to Bartolomei Cuellar, which were stated to be owned by the heirs of these persons, except No. 35, which was held by a person named as a purchaser.

The paper last named was objected to on the ground that it did not appear that it was an archive at Guerrero or in the General Land Office, and it was further claimed that the original would not be admissible if produced.

It sufficiently appears from the certificate authenticating the transcipt filed by Haynes that the paper was an archive at Guerrero, and if it appeared that it was such a paper as Haynes was authorized by the act under which he was appointed to procure a copy of, then the copy filed by him in the General Land Office would be an archive of that office; but as presented we are of the opinion that it should have been excluded on proper objection.   We are of the opinion that the act under which Haynes was appointed did not authorize him to procure and file it in the General Land Office, for the original was neither an "act, charter, nor grant affecting the lands on the east side of the Rio Grande," but merely a statement, it may be, of some official of the town of Guerrero as to his opinion as to the matters of which the paper speaks.   In this case, if it was not properly an archive in the General Land Office, the certified copy offered was not admissible.

The objection to papers before referred to, other than those which are termed the "general visit," made on the trial was as follows: "Because all that portion of said document beginning on page 64, at the said words 'in the town of Revilla,' and all the continuing portions thereof, appear to be made up of recitals of persons regarding matters

and things not relevant to the issues of this cause, and not admissible in the form offered, and instruments and documents which do not purport to be archives in any office in Mexico, and none of which are entitled to be archived in the General Land Office of Texas."

The papers here referred to are not mere recitals not relevant to the issues in this case, but evidence the acts of the officers of the Spanish government in making grants of land, in the adjustment of boundaries of land granted, ascertainment of unappropriated lands, and like matters. Some of them had bearing on the question of right of Joaquin Cuellar to the land in controversy and as to its boundaries, and all in some manner affected lands on the east side of the Rio Grande and threw more or less light on the many matters in reference to which information was sought through the act of April 24, 1871. Such being their character, and it being clear that they were properly archived at Guerrero, the copies filed by the State's agent in the General Land Office became archives of that office, as held in Railway v. Jarvis, 69 Texas, 527.

There were many objections made to the introduction of the certified copy of the paper known as the "general visit," which consists solely of the writings evidencing the acts of the sub-delegates Palacio and Osirio, and of persons acting under their instructions, which were authenticated by themselves with the necessary witnesses, and by Benavides, who was authorized by them to place inhabitants in possession of lands allotted at time surveys were made. The paper takes its designation from the fact that it evidences the acts of the sub-delegates who came to the Rio Grande frontier at the time named to organize the frontier towns and to designate the lands that should pertain to each for usual public purposes, as well as to allot lands to the settlers of such towns and to give evidence of the rights conferred.

The many objections urged to the admission of the certified copy from the Land Office may and will be grouped.

1. It was claimed that the paper offered in evidence was neither a copy of an archive in the Land Office nor of a paper that could legally become an archive. As held in Railway v. Jarvis, 69 Texas, 527, it rests with the Legislature to determine what shall become an archive, and under the statutes referred to in that case it must be held that the paper in the General Land Office from which the copy offered in evidence was taken was an archive, but its effect as evidence is a matter for consideration hereafter.

2. It was objected that the loss of the original was not proved nor its absence accounted for, and this objection embraces both the protocol and original testimonio evidencing the proceedings known as the "general visit."

From the record before us it appears that both the papers referred to properly became archives in two places in a foreign country, and

from the nature of the proceedings evidenced by them, did it not so appear in the record, this court would take judicial knowledge that they should so have become, and could not be legally withdrawn for production here.

The record of the proceedings was, in effect, the charter of the town of Revilla, now known as Guerrero, as well as the evidence of the town's right to all lands set apart for public use, and at the same time the evidence of individual rights to the tracts of land allotted to persons in whose favor no separate evidence of right was given.

The protocol, unless otherwise directed by competent authority, was required to be placed in the proper archive of the government, while the original remained with the interested parties as the evidence of their right; and affecting as it did the town in its municipal character and ownership, the archive of the town was the proper place of deposit.

The paper evidences the fact that neither the protocol nor original could be legally surrendered by their custodians to individuals to be taken to another country or for any other purpose, and the objections now considered were properly overruled.

3.   It was urged that the paper from which that filed in the General Land Office was copied, was not an archive in the town of Guerrero, and that this appears from the instrument itself.

So far as the contents of the paper show, it was one not only such as it was proper to make an archive of that town, but one which by competent authority was required to be so made.   In reference to such a matter it is peculiarly proper to presume that was done which ought to have been done, and especially so after the lapse of so many years.

If the original, authenticated by the sub-delegates with necessary witnesses and evidencing their acts, and the protocol, properly authenticated, evidencing the acts of Benavides under their orders, were found archived at Guerrero they would be held to make full proof of the facts testified to by them in the courts of all countries where the laws of Spain are in force, and in all courts governed by the rules of the common law wherein should arise a question as to the faith to be given to such instruments executed when the Spanish laws were in force and affecting property subject to the dominion of that sovereignty.

It is not clear from the record, except as before stated, how the papers from which those in the General Land Office were copied were authenticated; but it is evident that the copy in that office was not made from the original left by the sub-delegates and the protocol executed by Benavides with proper witnesses, which was directed to be attached to that original and both to be archived in Guerrero.   We have seen not only that the papers last named were directed to be archived at that place, but that this was done, and we have also seen that under the order of the Governor of the province those papers were directed to be delivered to Cordente and that they were received by him.   These facts appear

through papers properly authenticated, and the record clearly manifests that the labors of Cordente were guided by those papers, to which frequent reference is made.   Whether the papers archived in Revilla in 1767 and removed by order of the government in 1801 were ever returned can not be clearly ascertained from the record before us, but it is evident that they or copies of them were returned with a resolution of the Governor of the State of date October 15, 1830.   The resolution is not found in the record, but the inference from what does appear is that it accompanied the papers removed in 1801, or copies of such papers, and contained an order that they should be copied and placed in such enduring form as would perpetuate the evidence of the rights of the first settlers as well as of the town.

From the decree of March 3, 1831, it is evident that what was then done was in obedience to the order or resolution of the Governor of October 15, 1830; and that this required whatever papers were *restored* to be copied "in the form of testimonio of the said documents, in order that being protocoled they may perpetuate the evidence of possession of the first settlers of this city."

What was directed to be done was to perpetuate evidence of rights, which would be impossible if the record to be made would not import verity.

The meaning of the language above quoted is not clear, but in view of the fact that one of the papers constituting the "general visit" was a testimonio and the other a matrix, or protocol, a copy to be made from them would be not only in form but in fact a testimonio, and the direction that they should be protocoled for perpetuation carries with it the idea that they should be copied into a book.   The Spanish word "protocolo," when applied to a single paper, means the first draft of an instrument duly executed before a notary; the matrix, because it is the source from which must be taken copies to be delivered to interested parties as their evidence of right; and it also means a bound book in which the notary places and keeps in their order instruments executed before him from which copies are taken for use of parties interested.

It is evident that in neither of these senses strictly was the Spanish word translated "protocoled" used in the order of March 3, 1831, but the inference is that by resolution of the Governor of date October 15, 1830, the person who made the order of later date, and made the record from which the transcript in the General Land Office was taken, was directed to place in a book for preservation, as are matrices when said to constitute a protocol, the copies which the governor intended should be preserved as evidence of rights public and private conferred by the acts of the sub-delegates and persons acting under their orders; and we may be permitted here to say that after so great a lapse of time, with our restricted means for acquiring correct information, it would not be just to assume that what was deemed sufficient evidence of right

by the officers of the former government, who must be persumed to have been familiar not only with the general laws then in force but with the special laws and usages of the time, as well as the facts attending a particular transaction, is now entitled to no consideration.

We can not hold, under the facts presented, that the papers from which the transcript filed in the General Land Office was made were not archives in the town of Guerrero.

4. It was urged that the introduction of the certified copy from the General Land Office was forbidden by section 4, article 13, of the Constitution, but it is evident that this section of the Constitution has no application to it. Railway v. Jarvis, 69 Texas, 540.

5. It was claimed that the paper should have been excluded because it does not show that porcion No. 36 was granted to Joaquin Cuellar, and because it does not sufficiently describe the land.

It is true that the paper does not show that the porcion was originally granted to Joaquin Cuellar, through whom plaintiffs claim, but one step in their deraignment of title was to show that the land was granted to Jacinto Cuellar by the Spanish government, and through him they seek to show title in their ancestors, and if the paper tended to prove that fact it was admissible, unless subject to some other objection.

Looking to the whole paper, there can be no doubt that the land can be identified by the description therein given.

6. It was urged that the paper did not show more than an inchoate grant, and that for this reason it should have been excluded unless proof of confirmation was made.

The paper upon its face does not purport to evidence an inchoate right; but if it did this would not furnish sufficient reason for excluding it as evidence of some right and description of the land; and confirmation ought to be presumed, if necessary, from the long and continuous possession shown under claim based on the proceedings evidenced by the paper.

7. It was several times urged, in effect, that the record from which the copy filed in the General Land Office was taken would not have been admissible to prove the facts stated in it, or for any other purpose.

If that be true the paper offered should have been excluded; but if that be not true, then the transcript filed in the General Land Office, or a certified copy taken from that, ought to have been received as evidence of the facts which the paper states to be true; for the transcript in the Land Office having become by law an archive, certified copies from it may be used in evidence in cases in which the record now found in Guerrero could be.

The objections now under consideration are based on the proposition that the record found in Guerrero is but a copy and too remote from the protocols to be received in evidence. It must be conceded that the record in Guerrero now found in the archives of that town was made

in the year 1831, and it is proper to hold from what appears that it was copied from the papers there filed in 1767, subsequently removed and not returned until some time after October 15, 1830. That record, in so far as it contains the proceedings of the sub-delegates, would be what is termed in the Spanish law a "traslado," which is a copy taken by a notary from the original or a subsequent copy taken from the protocol, and not a copy taken directly from the matrix or protocol; but in so far as it contains the proceedings by Benavides it would be, so far as the record shows, what is the original, because the first copy taken from the protocol, or at most a subsequent copy taken from that paper.

It may be conceded that to entitle a paper of the class last described to entire faith under the Spanish law it should be given by the officer before whom the protocol was executed, or if by another notary on inquiry after citation to parties adversely interested; and further, that under the laws in force here the execution of the copy would have to be proved even when the protocol is an archive of the government, unless by reason of its age it was entitled to be introduced as an ancient instrument. A paper of the class first named, a copy taken from an original, under the Spanish law was only entitled to full faith against the party producing it, unless given after citation to the person adversely interested under judicial sanction, but it seems to be held when such a copy is given by the notary before whom the protocol was executed and by whom the original was extended, that even such copies are entitled to full faith; but under that law even a traslado, if it be ancient, is entitled to full faith although given by a notary other than the one before whom the protocol or original were authenticated, and without citation and judicial sanction in cases in which the property passed by it is possessed under the right conferred by it for the period of thirty years. These rules of the Spanish law, however, have no force here, further than that we may look to them to ascertain the character of evidence one claiming a grant of land from the Spanish government ought to produce.

Assuming, then, that the copy offered in evidence is an archive in the General Land Office, and that its remoteness from the protocols is as stated, then, in view of the facts shown by other instruments, to which the objection now under consideration does not apply, and of the further fact that plaintiffs and those through whom they claim have had continuous possession of the land described in these instruments, and claiming through them, for a period of seventy-five years, can it be held that the certified copy was not admissible under the rules of the common law to show the boundaries of their claim and the grounds on which this has been so long asserted, if for no other purpose? We think not; and it is unnecessary for us now to determine whether it

would be admissible and sufficient to show title if uncorroborated by other facts.

In The State v. Cuellar, 47 Texas, 295, extracts from the papers we have referred to were considered and properly held not to be admissible in an action for confirmation of title, but the transcript before us shows all the matters which the court was then unable to understand from the brief extracts used in that case; and besides, since that case was decided the copy now in the Land Office has been made by law an archive.

Many of the questions relating to the admission of the papers in question were considered in Railway v. Jarvis, 69 Texas, 530, which involved a similar question, which may be looked to, on matters now not fully discussed, for the reasons on which some rulings are made.

It is urged that the court erred in finding that plaintiffs, and those through whom they claim, before the institution of this action had possessed the land continuously for at least seventy-five years, claiming it under well defined boundaries; but the evidence fully sustains the findings, and there is evidence tending to show that their ancestor was in actual possession of the land at the beginning of this century, when the boundary between it and porcion No. 37 was for the second time established by the government. The same facts tend to show the exchange between Jacinto and Joaquin Cuellar, and justified the court's finding in this respect, and the recognition of the right of plaintiffs and their ancestors to the land by former governments and by this, until the patents relied on by the defendants issued, is to be inferred from the fact that their claim was asserted by possession, recognized by the vicinage as well as by papers in the archives of the former government, and their right was never questioned by any government or individual until appellants concluded that the land was vacant.

It is urged that the court erred in finding that the land was equitably owned by plaintiffs under color of title from the sovereignty of the soil at the time appellants made their locations; but if we disregard all the evidence contained in the certified copy of the "general visit" issued from the General Land Office, no other conclusion ought to have been reached from the other evidence in the case looking to the laws of which the court should have taken judicial notice.

At the opening of this century the father of Joaquin Cuellar, to whom was granted porcion No. 37, made known to the authorities that his son was in possession of the land in controversy, which was contiguous to his, and that by inclosure made by the son on the south he was excluded from water; by the Act of February 10, 1852, porcion No. 37 was confirmed to the father and porcion No. 35 to Joaquin Cuellar, and between these is porcion 36, the land in controversy, of which plaintiffs and ancestors had continuous possession for seventy-

five years before the trial of this cause, claiming the land as their own. These facts alone would have justified a finding that plaintiffs were not only the equitable owners but that they held it under title from the sovereignty of the soil.

The findings of fact required the findings of law, and while it is not necessary to rely upon the certified copy of the "general visit" to show the title of the plaintiffs, we desire to note the fact that by the Act of February 10, 1852 (Pasch. Dig., art., 4461), no less than twenty porcions of land within the jurisdiction of Guerrero were confirmed by numbers, as given in that instrument, to the persons to whom that showed these several porcions were granted in 1767; and had application been made for confirmation of porcion No. 36 it doubtless would have been made at the same time as was done in regard to those above and below and contiguous to it.

This action was brought by sixteen persons, all of whom claim by inheritance from or through Joaquin Cuellar, except some who were husbands of persons thus claiming and joined *pro forma*, and among those so claiming is Francisco Cuellar.

In bar of this action defendants pleaded a judgment of the District Court for Travis County in favor of the State, rendered against Francisco Cuellar, in an action brought by him as an heir of Jacinto Cuellar, in which he assumed to sue for himself and coheirs, who were not named, for confirmation of title to the porcion of land in controversy. That action was brought early in the year 1871.

On the trial of this cause defendants offered to read in evidence copies of the pleadings, judgment, and statement of facts in that case, but the court excluded the statement of facts on objection, and admitted the pleadings and judgment. It is urged that the court erred in excluding the statement of facts, but this ruling was evidently correct.

It is also urged that the court erred in excluding what is termed the "judgment roll," but this is not sustained by the record, for it was admitted under defendants' plea of not guilty, as shown in the statement of facts.

It is claimed that the court erred in not rendering judgment in favor of appellants on their plea of *res adjudicata*, but there was no error in this ruling for several reasons. That action was by Francisco Cuellar alone, and a judgment therein could not bar the right of the other plaintiffs in this case, even if it would bar an action by him; but that action was prosecuted by him as an heir of Jacinto Cuellar, and it would be no bar to this, even as to him, for he now sues in a different right. Thompson v. Cragg, 24 Texas, 582; Caruth v. Grigsby, 57 Texas, 266. If, however, that judgment could operate as a bar as to him this would not better the condition of appellants, for the land being equitably owned, titled, and occupied by plaintiffs at the time defendants' locations were made, under the provisions of the Constitution they could

acquire no interest in it (Const., art. 14, sec. 2), and the other plaintiffs would be entitled to recover.

Although the court below erred in the matter noticed, that furnishes no reason for reversing the judgment, for on the evidence no other judgment than the one entered could have been rendered, and it will therefore be affirmed.    It is so ordered.

*Affirmed.*

Delivered March 27, 1891.