**LINZ et al. v. EASTLAND COUNTY.**

No. 1119—5381.

Commission of Appeals of Texas, Section B.
June 10, 1931.

W. H. Flippen, Seay, Seay, Malone & Lipscomb, and Thompson, Knight, Baker & Harris, all of Dallas, Turner, Seaberry & Springer and Allen D. Dabney, all of Eastland, and Gib Callaway, of Brownwood, for plaintiffs in error.

J. R. Stubblefield, Chas. C. Robey, Frank Sparks, and Joe H. Jones, Co. Atty., and B. W. Patterson, all of Eastland, Beall, Worsham, Rollins, Burford & Ryburn and Albert B. Hall, all of Dallas, and John T. Suggs, of Denison, for defendant in error.

RYAN, J.

This is the second suit growing out of the attempt of Eastland county to recover certain funds on deposit in the Security State Bank & Trust Company, at the time the bank closed its doors and its affairs were taken over by the commissioner of insurance and banking.

Eastland county first filed its action in the district court of Eastland county against the Security State Bank & Trust Company, the commissioner of insurance and banking, and J. R. Burnett, special agent of the commissioner, to establish as a general deposit cer-

tain of its funds, and have them classified as claims entitled to be paid out of the depositors' guaranty fund. In substance, the petition alleged that on August 3, 1921, the defendant bank had complied with the provisions of the bank deposit guaranty statute, in that its unsecured noninterest-bearing deposits were protected by the depositors' guaranty fund; that on that date (when the commissioner closed the bank for liquidation) the county had on deposit in said bank $629,847.-42, which was protected by said fund, for which it filed its claim, which the commissioner rejected.

The facts in that case were: On February 14, 1921, the commissioners' court of Eastland county designated the Security State Bank & Trust Company as the county depository, and said bank entered into bond as required by law; on April 14, 1921, one of the sureties on said bond requested to be released, and the commissioners' court made an order requiring the bank to furnish a new bond, which was tendered and accepted on the same day. Subsequent to the approval of said bond, several of the sureties thereon suffered heavy financial losses, as a result of which, the county judge, on July 12, 1921, by letter advised the bank that the commissioners' court "finds that the bond is insufficient, and you are notified to tender said court a good and sufficient bond, and that the funds belonging to the county will be immediately withdrawn, unless the same is placed in noninterest bearing account protected by the 'State Guaranty Fund.'"

The bank immediately replied, addressed to the commissioners' court: "This is to advise you that we will secure just such a bond as your body will deem adequate, and in the meantime we have placed the funds of this county on a noninterest bearing basis, which deposit, under the terms of the banking laws, is protected by the Depositors' Guaranty Fund of the State of Texas."

The county subsequently thereto deposited $85,557.83 in the bank, some of it on the day before the bank closed. When the bank closed, on August 2, 1921, the county had on deposit in said bank two items, one of $556,535.15, and the other $73,312.27, making a total of $629,847.42 as sued for.

The district court rendered judgment in favor of the county establishing and classifying its claims, as unsecured, noninterest-bearing deposits, secured by the guaranty fund, and directed payment accordingly.

On appeal by the commissioner of insurance and banking, the Court of Civil Appeals at El Paso held that the attempt of the commissioners' court in agreement with the bank's officers to transfer the funds to a noninterest-bearing account within the guaranty fund statute was futile, and the deposits still remained secured and interest bearing, and therefore not chargeable against the guaranty fund. In that respect the trial court's judgment was reversed and rendered by the Court of Civil Appeals in favor of the commissioner of insurance and banking. Chapman v. Eastland County, 260 S. W. 889.

Writ of error was granted by the Supreme Court and referred to this section of the Commission of Appeals. We held, speaking through Judge Speer, that on July 12, 1921, when said letters were written and the bank attempted to place the funds in a noninterest-bearing account protected by the guaranty fund, the bank was hopelessly insolvent. "Under these facts," said Judge Speer, "the questions arise, first, was Eastland County a depositor in the Security State Bank & Trust Company, within the protection of the depositors' guaranty fund, as to the total of $629,847.42; and, if not, second, was Eastland County entitled as such depositor to protection for payment out of that fund as to the $85,557.83 deposited after the agreement referred to? We are of the opinion that the first question should be answered, 'No,' and the second one, 'Yes.' "

The contention there was that although Eastland county was not under the statute entitled to protection under the original arrangement with the Security State Bank & Trust Company as its depositary, the county's status was changed, after the agreement of July 12, 1921, from that of a secured interest-bearing depositor to that of an unsecured noninterest-bearing depositor, within the contemplation of the statute.

It was held by Judge Speer that the attempted change by a depositor from an interest-bearing deposit to a noninterest-bearing one, at a time when the bank was insolvent, would not create the status of "depositor" so as to entitle such depositor to the benefits of the guaranty fund—such attempted change, if given effect, would operate as a fraud. Attention was also called to the Act of February 28, 1923 (38th Leg. c. 45), amending article 486 of the Revised Statutes, so as to provide that any deposit of public funds, whether interest bearing or not, deposited in a state bank, shall not be insured.

The Commission of Appeals held that as to the item of $85,557.83 deposited after the agreement of July 12, 1921, the county came within contemplation of the statute and entitled, to that extent, to payment out of the guaranty fund, but not as to deposits previously made.

Accordingly, the judgments of the district court and Court of Civil Appeals were reversed, and judgment was rendered by the Supreme Court for the county, establishing the total amount of its claim as such was established by the trial court, but ordering that no part of the same be paid out of the guaranty fund save the sum of $85,557.83 so deposit-

ed after July 12, 1921. 276 S. W. 654, 655; 277 S. W. 629.

The judgment entry was afterwards modified so as to allow a recovery by the county from the defendants in error of the costs of the district court, but denying recovery of interest upon the $85,577.83 established as a claim to be paid out of the guaranty fund. 278 S. W. 425.

This judgment for $85,577.83, after it became final, was paid by the commissioner of insurance and banking to Eastland county; in the liquidation of the bank, further sums amounting to $133,250.94 were paid the county out of the bank's general assets.

After the decision by the Court of Civil Appeals, but before any action was had in the Supreme Court (writ of error having been granted), Eastland county, on July 3, 1925, filed the present suit against the City National Bank, the Security State Bank & Trust Company, Charles O. Austin, the then commissioner of banking of the state of Texas, and the several sureties on bonds Nos. 1, 2, and 3 named below, to recover from said banks and said sureties the amount remaining uncollected on the county's judgment against the Security Bank & Trust Company, obtained in the former suit.

It appears from this record that in February, 1919, the American National Bank of Eastland was designated as the county's depositary for the statutory two years' term. In June, 1920, the county had a large sum of money derived from the sale of an issue of road bonds, as a special fund. The American National Bank refused to act as depositary for that special fund, whereupon the City National Bank was elected such special depositary, and it agreed to pay the county 4.52 per cent. interest on daily balances, and executed to the county five surety bonds aggregating $330,000 in amount; such surety bonds and the respective amounts signed by each were: Southern Surety Company, $30,000; National Surety Company, $100,000; Fidelity & Deposit Company of Maryland, $40,000 and $100,000, respectively, on the two bonds executed by it; and the United States Fidelity & Guaranty Company, $60,000. These sureties are herein referred to as corporate sureties and the bonds executed by them, collectively, as bond No. 1.

In November, 1920, the assets of the City National Bank were taken over and all its liabilities assumed by the Security Bank & Trust Company. At that time the county had on deposit with the City National Bank, according to its books, the sum of $662,436.55, which credit was carried forward in the books of the Security Bank & Trust Company. Although no official recognition of this change of special depositary was made by the county, its authorities proceeded to deal with the Security Bank, as they had dealt with the City Bank, depositing therein proceeds from the sale of road bonds, and receiving monthly statements of the condition of the county's account, and accepting credits each month for the amount of interest due on daily balances, in accordance with the City Bank's contract with the county. This arrangement continued, with the American National Bank remaining as the general depositary, until February, 1921, when, under the statute, a new depositary for the ensuing two years was required to be designated. In due course, after bids were advertised for, the Security State Bank & Trust Company was so designated as county depositary, under a contract to pay $5.65 per cent. interest on daily balances. As such depositary it delivered to the county its statutory bond in the sum of $750,000 with S. D. Young, Edwin Hobby, D. E. Waggoner, Geo. W. Riddle, W. H. Gaston, Clarence Linz, Joe Burkett, and Allen D. Dabney, as sureties. This bond, herein referred to as bond No. 2, was approved by the commissioners' court on April 13, 1921.

On April 14, 1921, S. D. Young applied to the county to be relieved as a bondsman, and the Security Bank filed a new bond, which was approved by an order dated May 30, 1921, with C. T. Barringer, J. S. Mullen, R. A. Hodges, M. H. Smith, Edwin Hobby, R. L. Hunt, Joe Burkett, and Allen D. Dabney, as sureties. This was in the same amount as bond No. 2 and in the exact language thereof, and will be herein referred to as bond No. 3.

Upon trial by the court below, without a jury, after James Shaw, commissioner of banking, had been substituted as a party to the suit in place of his predecessor, Chas. O. Austin, and Edwin Hobby and R. L. Hunt, sureties (both then deceased) eliminated as parties, and recovery denied against the Lion Banking & Surety Company and W. G. Kelly, its receiver, and also denied against the heirs of W. H. Gaston, another deceased surety, judgment was rendered for the county: (1) Against the Security State Bank & Trust Company and the sureties on bond No. 3 (except Edwin Hobby and R. L. Hunt) for the sum of $355,587.88, with interest from August 3, 1921, at the rate of 5.65 per cent. per annum, and costs of suit; (2) against the sureties on bond No. 2 (except Edwin Hobby, W. H. Gaston, and Allen D. Dabney) for the sum of $175,336.63, with interest from date of judgment, at the rate of 6 per cent. per annum, and costs of suit; (3) against the City National Bank for the sum of $187,141.01, with interest at the rate of 4.52 per cent. per annum, and costs of suit; and against the sureties on bond No. 1, for the following amounts, with interest from August 3, 1921, at the rate of 4.52 per cent. per annum and costs of suit, viz.: United States Fidelity & Guaranty Company, $60,000; National Sure-

ty Company, $100,000; Southern Surety Company, $30,000; and Fidelity & Deposit Company of Maryland, $140,000.

It was further adjudged that the county be entitled to but one satisfaction of its judgment, and when the amount of $355,587.88, together with interest and costs shall have been paid, the same shall constitute a complete satisfaction thereof, also that subrogation be awarded the different groups of sureties in the inverse order of their bonds.

The Court of Civil Appeals at Eastland reversed the county's judgment against the corporate sureties on bond No. 1 and rendered judgment in their favor; affirmed the trial court's judgment against the defendants who did not appeal; and in all other respects reversed such judgment and remanded the cause for a new trial. 12 S.W.(2d) 662.

### Opinion.

1. The Court of Civil Appeals correctly decided that the county was not entitled to any recovery against the corporate sureties on bond No. 1.

Bond No. 1 was given to secure certain special funds realized from the sale of an issue of good roads bonds, deposited with the City National Bank, which had become the county's special depositary therefor, under the provisions of article 2443a, added to the Revised Statutes of 1911 by Act of the Legislature approved February 12, 1917 (Gen. Laws, 25th Leg., c. 11). In November, 1920, these funds, with other assets of the City National Bank, were by it turned over to the Security Bank, which assumed all the City Bank's liabilities and the county's warrants against such funds were paid by the latter bank, but so long as the funds were properly accounted for, it is immaterial whether the City Bank retained their physical possession or placed them elsewhere.

The Court of Civil Appeals finds, and the proof shows, that the City Bank had on deposit when its assets were taken over by the Security Bank, the sum of $262,436.55 (not including school funds which are not involved in this litigation), and by the 16th day of March, 1921, the county had withdrawn in the regular course of business sufficient funds to total that amount. No deposit was made by the county in the City Bank after November 24, 1920.

■ The funds, while special in the sense that they were set aside for special purposes by the county, were, so far as the depositary bank was concerned, a general deposit repayable by the bank on demand of the county, as called for, in any current money (Young v. Bundy [Tex. Civ. App.] 158 S. W. 566); the bank had the right to mingle it with other money deposits (Marine Bank v. Fulton County Bank, 2 Wall. 252, 17 L. Ed. 785), and

the title to the money passed from the depositor to the bank, which became debtor to the depositor in a like amount. Baker v. Kennedy, 53 Tex. 200; First State Bank v. Shannon (Tex. Civ. App.) 159 S. W. 398; First Nat. Bank v. Abernathy (Tex. Civ. App.) 153 S. W. 349. The obligation of the bank was to pay on the demand of the depositor, but not to keep and return the specific bills received. 7 C. J. p. 628.

■ This being true, the payments made by the bank—no formal application thereof having been made by either the county or the bank—should be credited according to priority of time, liquidating the oldest items first, as was correctly held by the Court of Civil Appeals (City National Bank v. Eastland County, 12 S.W.(2d) 662, 667), citing the following authorities: McLendon Hardware Co. v. Black (Tex. Civ. App.) 264 S. W. 1011; International Shoe Co. v. Kaufman (Tex. Civ. App.) 270 S. W. 1109; Friedman-Shelby Shoe Co. v. Davidson (Tex. Civ. App.) 189 S. W. 1029. To the same effect, see Bitter v. Bexar County (Tex. Com. App.) 11 S. W.(2d) 163, 166.

It is further shown by the record that when the Security Bank became the general depositary in February, 1921, all of the county's funds were placed in the same general account and vouchers drawn against it. Then on April 22, 1921, although no formal order requiring that to be done was made by the county commissioners' court, a new account was opened to the county treasurer's credit called the "Ed S. Pritchard Special Collection Account," in which was credited practically all the county's deposits made after that date, so that there were then two accounts, one being the general account, which included the old money, and the "Pritchard Special Account," which included only deposits made after April 22, 1921.

The county continued regularly to draw warrants against the bank, which were all charged against the old account until on June 21st this old account, which included the original deposit in the City National Bank, had been reduced to $5,412.36, and on the next day warrants for more than $13,-000 were drawn and paid out of said account, after the Pritchard special account was transferred thereto.

The parties themselves acted upon the assumption that such payments were being made according to the said legal rule of application of payments, and when the old balance was exhausted, the new, or Pritchard special account, was turned into the old account.

■ It follows, therefore, that the county has no cause of action against the City National Bank and its corporate sureties on bond No. 1.

2. When in February, 1921, the Security Bank was designated as the general county depositary and succeeded both the American National Bank of Eastland (which had theretofore been the county depositary) and the City National Bank (theretofore the special depositary), it became the depositary of all the county's funds, general and special.

The point that under article 2444, Rev. St. 1911, as amended by section 3, chap. 11, Acts 1917, the comptroller of public accounts must have approved bond No. 3 before it could become effective, seems not to have been raised in the trial court nor in the Court of Civil Appeals by any of the parties and was injected into the case for the first time by that court. All parties treated that bond as having been properly approved, but the Court of Civil Appeals held that they are required to give effect to such provision as to approval by the comptroller, and because the record is silent on that question, the burden devolved upon the bondsmen on bond No. 2 who sought relief from their obligations on the ground that bond No. 3 had been substituted therefor, to show such approval by the comptroller.

The record is likewise silent on the question of whether the comptroller approved bond No. 2, but as to this the Court of Civil Appeals found liability on the ground that statutory provisions with reference to approval of bonds are made for the protection of public funds and not for the benefit of sureties and that sureties who execute a bond, upon the faith of which public funds are delivered to their principal, cannot defend against liability on the bond on the ground that same had never been approved.

The Court of Civil Appeals therefore concluded that if bond No. 3 was never approved by the comptroller, the sureties on bond No. 2 remained liable for the defaults of the bank. This seems illogical to us; the same reasoning applied to both bonds, and if liability exists on bond No. 2 for the reasons given by the Court of Civil Appeals, likewise liability should exist on bond No. 3.

Article 2444 provided: "As soon as said bond be given and approved by the commissioners' court, and the State Comptroller of Public Accounts, an order shall be made and entered upon the minutes of said court designating such banking corporation, association, or individual banker, as a depository of the funds of said county until sixty days after the time fixed for the next selection of a depository," etc.

■ No specified or formal manner is prescribed for the comptroller's approval; it and that of the commissioners, if required, were antecedent things to be done but the final and effective act in the procedure is the formal order of the commissioners' court entered upon the court's minutes, designating the depositary; into it was merged the antecedent proceedings and it must be conclusively presumed, in the state of this record, that everything required to be done, was done. It was only after approval of the bond by the commissioners' court and the state comptroller, that such order designating a depository could be made, and this was required to be formally done and entered upon the minutes.

We therefore hold that bond No. 3 as well as bond No. 2 was enforceable.

■■ 3. As correctly held by the Court of Civil Appeals, statutory provisions with reference to the approval of bonds are made for the protection of public funds, and not for the benefit of the sureties, and a surety who executes a bond and delivers it to the proper authorities, and upon the faith of which public funds are delivered to the principal, cannot defend against liability on the bond on the ground that same had never been approved. 12 S.W.(2d) 662, 670.

As said by the Supreme Court of Missouri, in School District v. Security Bank, 26 S. W.(2d) 785, 792: "By signing and delivering the bond, the sureties, including appellants, intended that the bank should become such a depositary. That act enabled the bank to get hold of one-eighth of plaintiff's funds. * * * The engagement of the sureties on the bond in suit was to stand sponsor for the bank—to answer for its default. That default could arise whether the bank was a depositary de facto, or de jure. That default has arisen, and appellants, as sureties on the bond, must answer therefor."

Unless the statute expressly declares that a bond not executed in the form prescribed shall be void, the statute will be construed to be directory only and a substantial compliance with it will suffice. Mechem on Public Officers, § 268. That it was not approved by the designated officers, if acted on, is immaterial. Id. § 269.

Mr. Murfree, in his work on Official Bonds, section 59, says: "It is safe to say, however, that no law which requires of an official person the duty of examining and approving an official bond can be so far mandatory as that his neglect to discharge his duty, can release the obligors from the liability they incur by its execution, if under it, the office has been assumed and duty performed, or neglected."

This rule is approved by Chief Justice James in Harper v. Golden (Tex. Civ. App.) 39 S. W. 623. See, also, 29 Cyc. 1452; 9 C. J. 25. In Burnett v. Henderson, 21 Tex. 589, and King v. Ireland, 68 Tex. 685, 5 S. W. 499, sureties were held estopped from denying the official character of their principal.

In this character of bond, the statute contains no provision that the bond shall be void, or the principal therein shall not enter

into the functions of his office, unless such bond is so approved; in this respect it differs from tax collector's bonds, which must be approved, as to state moneys, by the comptroller, and proper commissioners' court (Rev. St. 1925, art. 7247), and as to county moneys by the commissioners' court (Rev. Stat. 1925, art. 7249), because the law emphatically prohibits any tax collector from entering upon the discharge of the duties of his office, until "all of the bonds required of him by law for the collection of any taxes, State, county or special, shall have been given and approved." Article 7251, Rev. Stat. 1925. It is under this essentially different statute that the courts have held the comptroller's approval necessary in the case of tax collector's bonds, as in State v. Wells, 61 Tex. 562, and Finch v. State, 71 Tex. 52, 9 S. W. 85, but this rule does not, as we have seen, apply to the bonds in the instant case.

■ 4. Under article 1845, Rev. Stat. 1911, as amended by Acts 1919, p. 24, the county had the statutory right to sue the bondsmen on both bonds, in the same action, they being sureties for the same depositary and the difficulty of determining when the default sued for occurred, and which set of sureties were liable therefor, having been properly alleged in the petition, there was therefore no misjoinder of parties. Harris County v. Charlton, 112 Tex. 19, 243 S. W. 460, 245 S. W. 644; Skipwith v. Hurt, 94 Tex. 322, 60 S. W. 423.

5. Sureties on bond No. 2 contend that whatever claim the county may have against them is 'barred by the statute of limitation of four years, in that bond No. 3 was accepted and approved by the county and became a substitute for bond No. 2 more than four years before this suit was begun; that the county's cause of action against the sureties on bond No. 2 matured on either April 14, 1921 (when bond No. 3 was first approved), or on May 30, 1921 (when formal order of approval was entered in the minutes of the county commissioners' court), and this suit was not begun until July 3, 1925, more than four years thereafter.

The county's reply to such plea of limitations is that the statute "does not run against a county when acting in a governmental capacity," and the funds sued for are held and disbursable only in such capacity; this, because the statute of limitations does not apply to the state or its governmental agencies.

■ It is the opinion of the members of the Supreme Court, on the authority of Bitter v. Bexar County (Tex. Com. App.) 11 S. W.(2d) 163; Harris County v. Charlton, 112 Tex. 19, 243 S. W. 460, 245 S. W. 644; and Houston & T. C. Ry. Co. v. Travis County, 62 Tex. 18, that the statutes of limitations are available as against the county's claim in so far as applicable to the county's general fund.

County funds are classified into three accounts, viz.: (1) Jury fund, out of which jurors in the district and other courts, including the feeding of jurors, are paid; (2) the road and bridge fund, out of which all scrip issued under the provisions of the road law or for work done on roads and bridges are paid; and (3) the general fund, out of which all the general indebtedness of the county, including feeding and guarding prisoners, and pauper's claims, are paid. Rev. Stat. 1925, art. 1626; art. 1628.

Counties may cause such other accounts to be kept, creating other classes of funds, as they may deem proper (Rev. Stat. 1925, art. 1629); but these, of course, must be for purposes properly within the purview of counties under the Constitution, such as school funds and road funds derivable from the issuance of bonds, or from special taxation, and therefore not classifiable as general funds.

■ We therefore hold that the four years' statute of limitation applies in this case to so much of the county's claim against bond No. 2 as belongs to the general fund. As to other funds, we hold that no statute of limitations will run in favor of bond No. 2 as to funds belonging to the jury the school, or the road or bridge funds, or any other fund of like character, such as school district and road district funds.

6. It is also contended that the county's suit against the bank and the commissioner of insurance and banking, in which the county sought to establish its entire claim as a non-interest-bearing, unsecured deposit, payable out of the guaranty fund, and the pursuit of that claim to final judgment in the Supreme Court, constituted an election of remedies which bars the county from maintaining this suit which is based upon the proposition that the account sued on here was secured and interest bearing.

The county had two different rights or subjects of action, one against the bank and insurance and banking commissioner, for the amount deposited after July 12, 1921, as an unsecured noninterest-bearing account, and therefore protected by the state guaranty fund, the other against the bank and sureties on its bonds as county depositary for the amounts deposited prior to that date. These constituted two different depositary funds. Judge Speer, in effect, so held in Eastland County v. Chapman (Tex. Com. App.) 276 S. W. 654; Id. (Tex. Com. App.) 277 S.W. 629; Id. (Tex. Com. App.) 278 S. W. 425.

As correctly held by the Court of Civil Appeals, the county never had two remedies on any portion of its deposit in the bank. For the money deposited (unsecured and noninter-

est bearing) after July 12, 1921, no right of action existed against the bond sureties and no right of action existed against the guaranty fund for moneys deposited prior to that date. In the former case, the remedy was against the guaranty fund; in the latter, against the makers of the bonds. The two obligations were entirely different.

■ The county undertook to protect itself by filing two claims with the commissioner, one as a secured and the other as an unsecured depositor. It then sued the commissioner on the theory that the entire deposit was unsecured. That was a fancied remedy as to the secured deposit, which remedy never existed, as held by Judge Speer, and the futile pursuit of it, either because the facts turn out to be different from what the plaintiff supposed them to be, or the law applicable to the facts is found to be other than supposed, does not preclude the plaintiff from thereafter invoking the proper remedy (9 R. C. L. p. 962), but before that suit was finally disposed of in the Supreme Court the present suit was filed.

■ As said by Judge Powell of this section of the Commission of Appeals, in Poe v. Continental Oil & Cotton Co., 231 S. W. 717, 719, "the higher courts are a unit in support of the proposition that the doctrine [election of remedies] does not apply unless the claimant actually has two valid and available remedies at the time he makes his election," quoting with approval Bandy v. Cates, 44 Tex. Civ. App. 38, 97 S. W. 710, 711, where Judge Key uses the following language: "His supposition that he had a particular remedy and his effort to enforce it is immaterial and does not constitute an election, unless the remedy in fact existed."

■ If, as held by Judge Speer, the county is not entitled to the relief sought in the other suit, as against the guaranty fund, its action in that case did not constitute such election as would cut it off from its right to recover on the bonds. Bandy v. Cates, 44 Tex. Civ. App. 38, 97 S. W. 710; Brodkey v. Lesser (Tex. Civ. App.) 157 S. W. 457; Bierce v. Hutchins, 205 U. S. 340, 27 S. Ct. 524, 51 L. Ed. 828.

The holding in First State Bank v. Collier (Tex. Com. App.) 23 S.W.(2d) 716, is not inconsistent with the doctrine above announced. There the bank, with a subscribed and paid-up capital stock of $100,000.00, afterwards increased to $150,000, operated under the guaranty fund plan provided by Acts of the 2d Called Session of the 31st Legislature, to secure its depositors; afterwards in April, 1926, the bank amended its charter so as to change the form of securing its depositors to the bond security plan as permitted by act of the 39th Legislature, Regular Session; the capital stock was then decreased to $100,000. The amount of the reduced capital stock was not withdrawn, but passed to the surplus in the bank and used as assets in its liquidation. On May 6, 1926, the bank delivered to the banking commissioner by way of pledge and to secure its depositors, $100,000 in United States bonds, which the commissioner approved, said bonds having been previously approved by the county judge of Lamar county. No bond or policy of insurance was ever filed with the commissioner. The United States bonds deposited on May 6, 1926, were purchased by the bank with its "bills receivable."

The bank went into liquidation on May 26, 1926, in charge of the banking commissioner. The United States bonds deposited with him were sold, and Collier with the other unsecured depositors accorded preferential payment from the proceeds, upon the commissioner's assumption that there had been a valid change in the securing of such depositors from the guaranty fund plan to the bond security system. Such depositors, when they received such payments, were notified that the sums paid them by the commissioner were the proceeds of the securities deposited with him by the bank under the bond security system. The appellees in that suit accepted such payments and made no protest against the bank being liquidated under the bond security system. They received a further dividend out of the bank's general assets, and not until long afterwards did they set up the claim that the bank's effort to change from the guaranty fund plan to the bond security system was ineffective because of failure to comply with the statutes regulating such change. It was further shown that appellees received the same amount on their claims as they would have been entitled to had every step taken by the bank in making such change been in strict compliance with the statute. It was correctly held, also, that under the bank guaranty law a bank could not be a bond security bank and at the same time have its depositors protected under the guaranty fund plan.

By proving their claims against the bank as a bond security bank and receiving payment thereon, the depositors in question recognized the validity of the transfer made by the bank from the guaranty fund plan to the bond security system and waived their right to denounce such transfer as unlawful.

In Tyler County Bank v. Shivers (Tex. Com. App.) 6 S.W.(2d) 108, the depositors had presented their claims to the commissioner of banking as common creditors and afterwards sought to impress a trust upon the assets of the bank. This section of the commission properly held that the remedies are inconsistent and in the absence of fraud or mistake, with full knowledge of all the circumstances, an election of one precludes the pursuit of the other.

In those cases the election was made with full knowledge of all the circumstances and with reference to only one fund or character of fund; here there were two funds of different character and with different applicable remedies.

7. Certain of the plaintiffs in error insist that even if the county is not barred by an election of remedies, it is estopped by judicial admissions made in the former suit of Eastland County v. Chapman, Comm'r, also that the judgment therein is res judicata here.

■ A party will not be allowed in a subsequent judicial proceeding to take a position in conflict with a position taken by him in a former judicial proceeding to the prejudice of the adverse party—the parties and the questions involved being the same. Smith v. Chipley, 118 Tex. 415, 16 S.W.(2d) 269; 10 R. C. L. 702. But, in this case the issues and the parties are not the same as in the former or original suit. The sureties were not parties to the original suit and the issues presented in this case were not there adjudicated against the county and in favor of the sureties. The identical "thing adjudged" there was not adjudged here. 34 Cyc. 1666.

As stated in 34 C. J. 806: "Where a plaintiff is defeated in an action upon a certain theory of his legal rights or as to the legal effects of a given transaction or state of facts, through failure to substantiate his view of the case, this will not as a rule preclude him from renewing the litigation, without any change in the facts, but basing his claim on a new and more correct theory. This rule applies * * * where plaintiff alleges a different ground of liability on the part of defendant." This doctrine is approved in Downing v. Diaz, 80 Tex. 455, 16 S. W. 49, wherein it was held that a party suing unsuccessfully as heir of Jacinto Cuellar, for the recovery of land, could thereafter sue for the same land, as heir to Joaquin Cuellar—the judgment in the former suit did not operate as a bar "for he now sued in a different right."

As correctly held by the Court of Civil Appeals, there are not sufficient facts shown in this record to support an equitable estoppel, and no such injury is shown to have resulted to the sureties as would estop the county in the present case (thus releasing the parties who were actually liable), in the absence of a clear showing of injury.

■ The Court of Civil Appeals also correctly held that the sureties were not released by the attempt of the county to change the deposit from a secured to an unsecured account after July 12, 1921.

Such attempted change, so far as moneys deposited prior to that date are concerned, was not effective and did not effectuate such change of status. Eastland County v. Chapman (Tex. Sup.) 276 S. W. 654.

We agree with the Court of Civil Appeals that the defense of discharge of sureties by change of contract is not in this case at all, for the further reason that the sureties did not guarantee the performance of any contract between the county and its depositary, but only the acts and conduct of the depositary. 12 S.W.(2d) 662, 673.

8. Bonds Nos. 2 and 3 were both conditioned that the bank shall faithfully perform all the duties and obligations devolving upon it by law, as the county depositary for Eastland county, and shall pay upon presentation all checks drawn upon it by the county treasurer, that the county funds shall be faithfully kept and accounted for according to law, shall in every respect comply with all requirements of the acts of the Legislature and perform each and all of the conditions contained in and discharge all the duties imposed by said acts.

■ The obligation being, among others, that the county funds shall be faithfully kept and accounted for, means that the bond was intended to cover not only funds subsequently deposited, but those already deposited, as well.

The obligors on bond No. 3 therefore are liable to the county for all funds, Pritchard v. National Surety Co. (C. C. A.) 2 F.(2d) 591, on deposit with the bank at the time it closed its doors and ceased to pay those deposits, not to exceed the amount of the bond.

The obligors on bond No. 2 are liable to the county (not exceeding its amount) to the extent of any default which occurred prior to the approval of bond No. 3, less any payments made thereon by the bank under the doctrine of appropriation of payments above discussed in connection with the obligations on bond No. 1, and less any amounts barred by limitations as above stated, and any recovery against the obligors on bond No. 2 should be credited (when paid) against the recovery on bond No. 3. Loyd v. City of Fort Worth, 82 Tex. 249, 17 S. W. 612; 29 Cyc. 1458; C. J. 1073 (§ 409), 1082 (§ 441); Murfree, Official Bonds, §§ 219, 636, 680, 794; Mechem on Public Officers, § 287.

The county is, of course, entitled to but one satisfaction of its judgment, and the obligors on bond No. 3 are entitled to recovery over against those on bond No. 2 for any part of the latter's obligations, if any, the former may be compelled to pay.

■ 9. The statute (Rev. Stat. 1925, art. 5072) provides that all judgments of courts of this state shall bear interest at the rate of 6 per cent. per annum from and after the date of the judgment except where the contract upon which the judgment is founded bears a specified interest greater than 6 per cent. and not exceeding 10 per cent. per an-

num, in which case the judgment shall bear the same rate of interest specified in such contract, after the date of such judgment. Therefore, because the obligations sued on bear a contract interest rate of less than 6 per cent. per annum, interest thereon should be calculated at the contract rate until the date of judgment; the judgment to bear interest at the rate of 6 per cent. per annum after its date. Sheldon v. Martin (Tex. Sup.) 8 S. W. 61; Galveston County Drainage District v. Foster (C. C. A.) 284 F. 932.

We recommend that as against the defendants in the trial court who did not appeal, the judgment be affirmed; that the judgment of the trial court in favor of the county against the corporate sureties on bond No. 1 be reversed and judgment rendered in their favor, and that in all other respects the judgment of the trial court be reversed and the cause remanded for a new trial in accordance with this opinion.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both in part affirmed, in part reversed and rendered, and in part reversed and remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the question discussed in its opinion.