**C. D. LANCE, Appellant,**

v.

**CITY OF MISSION et al., Appellees.**

No. 10277.

Court of Civil Appeals of Texas.

Austin.

Dec. 8, 1954.

Rehearing Denied Jan. 5, 1955.

See also, Tex.Civ.App., 258 S.W.2d 958.

Ewers, Cox & Toothaker, Charles Elick, McAllen, for appellant.

Cox, Patterson & Freeland, McAllen, for City of McAllen.

Sid L. Hardin, Edinburg, for City of Edinburg.

Hill, Lockridge, King & Hodson, Mission, for City of Mission.

ARCHER, Chief Justice.

This is an appeal from the order of the trial court sustaining appellees' motion for summary judgment.

Appellant Lance brought suit for damages to his crops caused by inundation by water diverted to his land through a ditch allegedly controlled by appellee cities, used by the appellees to drain Moore Field. The appellee cities, also called Tri-cities, moved for summary judgment on the primary basis that in an earlier suit Lance pursued an inconsistent cause in which he alleged he owned and was entitled to receive water from the same source.

The assignments of error are that the court erred in sustaining defendants' motion for summary judgment based on the ground that in a prior cause plaintiff alleged that he owned the drainage waters in issue, and that his lands were entitled to receive them, whereas he now alleges that appellees have no right to cause or allow the waters to flow upon his land in that the waters in issue and the lands and the parties are not identical in the two cases; in sustaining the motion on the ground that in a prior cause plaintiff alleged that the waters were beneficial to his lands, whereas he now alleges that the waters damage his crops, in that the waters in issue, the lands and the parties were not identical in the two cases; in basing the judgment on the ground that in

a prior suit plaintiff alleged that the United States Government had made an oral arrangement with plaintiff's predecessor in title, whereby waters were allowed to flow on lands now belonging to plaintiff, where the plaintiff now alleges that the United States had no right to cause said waters to run upon these lands in that the waters in issue, and the lands and parties were not identical in the two cases, and the United States is not involved in this litigation; in sustaining the motion on the ground that in a prior cause plaintiff prayed that the defendant therein be restrained from allowing waters in the drain ditch from running upon his land, whereas in the case at bar plaintiff asks damages because defendants allow the waters to drain on his land in that the waters in issue and the lands are not identical in both cases; in sustaining the motion on the ground that the prior and present cause of action are inconsistent and repugnant causes in that the prior cause of action as alleged was no cause of action recognized at law; in failing to overrule defendants' motion for summary judgment on the ground that defendants permitted rain water to drain through the ditch, unauthorized persons to dam it and to pump into it waters collected from new watersheds, to plaintiff's damage; that no detriment was suffered by the defendants as a result of the commencement of the two cases by plaintiff; and finally in failing to overrule defendants' motion for summary judgment on the ground that plaintiff, in the commencement of said two causes, made no election of rights or remedies, and acted under mistake as to his rights.

On March 16, 1952, plaintiff filed his verified petition against C. F. Spikes as defendant. In this suit plaintiff was represented by attorneys other than those now representing him. No trial was had and the suit was dismissed on March 20, 1953, on plaintiff's motion. This case will be referred to as the Spikes Case hereafter.

The present case was filed on February 25, 1953, and an amended petition was filed March 12, 1954, with the cities of McAllen, Edinburg and Mission, known as the Tricities as defendants.

In the Spikes Case plaintiff alleged that he was the owner of 96.74 acres of land and rented 200 acres more adjoining and that the defendant is the owner of land lying west of plaintiff's land; that some eleven or twelve years before the institution of the suit the United States purchased some land for the purpose of constructing an airport, called Moore Field, and

> "That in getting the field ready for operation some eleven (11), or twelve (12) years ago, it was necessary and advisable to arrange for drainage from the airport, which consisted of some eight hundred (800), or nine hundred (900) acres of land, to some distant point and the authorities in charge of the construction of Moore Field secured an easement or right of way for a drain ditch from the east side of Moore Field in an easterly-southeasterly direction some three (3), or four (4) miles, and secured written easements and titles for a right of way for a drain ditch across various lands including lands which the Defendant Spikes has recently purchased. That a drain ditch was dug from Moore Field to the Plaintiff's land in such manner that the drain ditch drains all the water from Moore Field across the various tracts owned by numerous owners including Defendant Spikes, to the lands belonging to the Plaintiff. That the Plaintiff's land has thereon a low spot considerably lower than Moore Field and situated in such manner that the waste water and sewerage from Moore Field ran down the drain ditch and onto the lands which Plaintiff purchased in 1944.

> \* \* \* \* \* \*

> "5. That some sort of arrangement was made between Plaintiff's predecessor in title (the exact nature which is unknown to the plaintiff) such arrangements not being in writing, but being a verbal arrangement between the Moore Field authorities and Plaintiff's predecessor in title, which arrangement was made some eleven or twelve years ago whereby in consideration of permitting the water to run from Moore Field and

be deposited on the land now owned by the Plaintiff, and to compensate Plaintiff's predecessor in title and his successors in title for the damage occasioned thereby, Plaintiff's predecessor in title and all of his assigns in title would own and have the use of all the water coming down the drain ditch to be used for irrigation purposes. That all of the lands involved herein are north of any existing water district in Hidalgo County, Texas, and do not have irrigation facilities available and Plaintiff's predecessor in title was willing to permit the water of Moore Field to be dumped upon his land provided he got all the water for irrigation uses. That approximately eleven years ago Moore Field began the operation of the Field and began dumping water on the land now owned by the Plaintiff, which condition has continued from that time until the present. That approximately four weeks before the filing of this petition, the Defendant Spikes put a dam in this ditch where it crosses his land and began pumping water out of the ditch onto his land to use for irrigation, and has been unlawfully converting to his own use and benefit all of the water coming down said ditch from Moore Field during the last few weeks.

" *    *    *    *    *    *

"8. Plaintiff would further show to the Court that he has used, owned, claimed, and had the use of all of the water running through the ditch for more than four years prior to the unlawful placing of said dam therein by the Defendant Spikes, under claim of ownership and the right to all the water in said ditch, which claim and use has been open and notorious and which was known to the Defendant and his predecessor in title at all times for more than ten years and the Defendant knew at all times that Plaintiff was the owner of said water and all the water in said ditch and had claimed and used said water ever since the construction of said ditch. *  *  *

"10. Plaintiff would further show to the Court that he has planted and is now growing on his land, and lands which he has rented, nearly three hundred (300) acres of crop consisting of cotton and tomatoes and other growing crops and that because of the extensive drought conditions now existing and which has existed for many months, and that Defendant is unlawfully depriving him of his right to such water and unless enjoined from the use of same the Plaintiff will in all probabilities lose a crop, and Plaintiff has no adequate remedy at law."

The prayer for relief was:

"Wherefore, premises considered, Plaintiff prays that the Defendant be cited to appear at such time and place as the Court sees proper, then and there to show cause why the Defendant should not be enjoined and restrained from use of water from said ditch, that upon final hearing hereof the Court enter a permanent injunction enjoining and restraining the Defendant Spikes from using any water from said ditch, and that the Court enter judgment declaring that the Plaintiff is the owner of and entitled to the use of all the water flowing through said ditch and for such other and further relief in law and in equity to which Plaintiff may show himself entitled as in duty bound will ever pray."

In the instant case the plaintiff Lance sued the Tri-cities, alleging ownership of 96.74 acres and 3.9 acres of land, and that the defendants have acquired title and right to Moore Field, together with all of the drainage facilities in connection therewith, and that during the course of the operation by the cities he has received great amounts of collected diverted disposal water which came down the drain ditch. Plaintiff alleged that Spikes, with the knowledge and consent of the cities, has pumped great amounts of water into the ditch from time to time from areas the ditch did not naturally drain.

The plaintiff further pled that:

"In the month of April of 1951, there was a large rainfall in the general vicinity of Moore Field and a great amount of water came from the area of Moore Field, much of which was paved and could not absorb water, and the area surrounding the drainage ditch; that such water rushed through said ditch and poured out on to plaintiff's land, and that by virtue of the water that came down said ditch and which was diverted from its natural flow on to plaintiff's land, plaintiff suffered the loss of nineteen (19) acres of crops which he had growing upon his land, and which crops would not have been drowned out and totally destroyed but for the diversion of waters through said ditch."

Further allegation was made:

" * * * that on or about the 6th day of June, 1952 another heavy rain fell in the area of Moore Field and again flooded plaintiff's land, and that plaintiff suffered the loss of the following crops due to drowning out by diverted and impounded water: * * * that the loss was due solely and entirely to the collection and diversion of water down the above described drain ditch, all of which water came from Moore Field and the territory surrounding the drainage ditch and which water would not have reached this plaintiff's land by its natural flow had said drain ditch not been constructed and such water diverted to plaintiff's land thereby."

Plaintiff further pled in paragraph XI:

"That in June of 1952, when such heavy rain occurred and such water was diverted on to plaintiff's land, plaintiff foresaw that such would occur and constructed a dam in said drain ditch on the land immediately west of his land, for the purpose of damming and controlling said water as it came down the ditch so that it would not reach plaintiff's land; that the said C.

F. Spikes, with the knowledge, consent and acquiescence of the defendants, constructed a large dam on his land where said ditch ran through his land, and that such dam was constructed for the purpose of damming up drain water as it came from Moore Field through said ditch, so that the said C. F. Spikes might use said water for irrigation purposes and that, in fact, C. F. Spikes was using said water for such purposes. That when said heavy rain occurred in June of 1952, a tremendous volume of water in said ditch came down to the dam of the said C. F. Spikes, collected there and backed up toward Moore Field until such a heavy volume was built up that the dam of the said C. F. Spikes was broken and destroyed, and that, therefore, such a tremendous volume of water was forced down upon the dam constructed by the plaintiff that the plaintiff's dam was completely destroyed and all of the improperly impounded water rushed down upon plaintiff's land and covered same, causing the damage above described. That such damage above described was caused concurrently by the action of Tri-Cities defendant in diverting such water from its natural flow and by the acts of the said C. F. Spikes in damming said water and causing same to rush down upon plaintiff's land in tremendous volume and force, which acts of the said Spikes were well known to the Tri-Cities, for all of which they should be held liable to this plaintiff."

It is apparent that the same ditch, the same source of water is being complained of in each suit. In the first suit complaint was made that the water was being diverted by Spikes, with attendant damages on account of the failure to receive all of the water, and in the instant suit complaint is being made of the excessive water and the diverting into the ditch of additional water with the attendant damages.

The defendant cities made a motion for summary judgment on the grounds that:

"3. Said prior cause of action asserted substantive rights inconsistent

with the alleged rights which plaintiff here seeks to enforce or protect and was based upon allegations wholly inconsistent with and repugnant to the alleged facts set forth in the plaintiff's petition herein, as follows:

"a. In said prior cause the plaintiff alleged that he owned the drainage waters in issue, and that his lands were entitled to receive them; whereas, in the case at bar the plaintiff alleges that the cities have no right to cause or allow the waters to flow upon his land.

"b. In said prior cause the plaintiff alleged that the waters were beneficial to his lands, whereas plaintiff alleges in the case at bar that the water damages his crops.

"c. In said prior suit, the plaintiff alleged that United States Government officials had made an oral arrangement with plaintiff's predecessor in title pursuant to which the waters were to be allowed to flow on the lands now belonging to plaintiff; whereas, the plaintiff alleges in the case at bar that the United States had no right to cause said waters to run upon these lands.

"d. In said prior cause, the plaintiff prayed that the defendant therein be restrained from allowing the waters in the drain ditch from running upon his lands; whereas, in the case at bar the plaintiff prays for relief because of defendants' allegedly allowing the waters to drain onto his lands.

"4. Having elected to pursue said prior inconsistent cause of action based upon allegations of facts repugnant to those herein alleged, the plaintiff cannot now pursue the cause alleged by him in the suit styled and numbered as above."

Plaintiff filed his resistance to defendant's motion and prayed that it be overruled on grounds as follows:

"1. That in addition to complaining of rain water draining through the ditch in question, the defendants permitted unauthorized persons to dam said drainage ditch and to pump into it waters collected from areas which otherwise would not flow upon plaintiff's land, which practices have, as he alleges, caused him great damage.

"2. That these defendants were not parties to proceeding No. B-18679 and that no election was made as to them and no disposition was sought to be made of their rights, and they have not, in any way, been affected by such litigation, they have suffered no detriment as a result thereof, plaintiff has neither gained nor acquired any benefit or right against them, and that there has been no legal change in the position of plaintiff and defendants, consequent on the filing of said cause No. B-18679.

"3. That defendants have not shown that plaintiff had a cause of action that was then available to him on the allegations of his petition in said cause No. B-18679 which was inconsistent to the one he now asserts; that the grounds of defendants' motion demonstrate that plaintiff in said former cause had no available and inconsistent cause and conclusively show that he made no election of rights or remedies and under whatever purport he acted, he acted under mistake as to his rights.

"4. That at the time of commencement of Cause No. B-18679, plaintiff leased considerable acreage over which the drainage waters flowed before coming upon his land, which land he was not leasing at the time of the commencement of this cause.

"5. That all of the alleged damage in the case at bar accrued subsequent to the time of commencement of the prior cause."

By trial amendment plaintiff alleged that no cause of action was stated in the suit No. B-18679 as would amount to a prior inconsistent cause of action and election thereof; and that plaintiff by motion in

open court moved for a dismissal of said prior suit, which motion was granted by the court.

We do not believe that the appellant, plaintiff in the two suits, is estopped to pursue a cause of action which he asserts in the present suit, and that the institution of the first suit was not such an election as to bar further proceedings in the subsequent suit.

■ The doctrine of election of remedies is not a favorite of equity and it has been said that "it is a harsh, and now largely obsolete rule, the scope of which should not be extended."

Slay v. Burnett Trust, 143 Tex. 621, 187 S.W.2d 377; Bandy v. Cates, 44 Tex.Civ. App. 38, 97 S.W. 710, error ref.; Poe v. Continental Oil & Cotton Co., Tex.Com. App., Sec. B., 231 S.W. 717; Linz v. Eastland County, Tex.Com.App., 39 S.W.2d 599, 77 A.L.R. 1466.

In the above cited cases the Court fully discussed the law pertaining to election of remedies, and of rights, and no useful purpose could be served by restating it.

■ Defendants have not suffered any detriment as a result of the institution of the two suits by plaintiff, nor has plaintiff benefitted at the expense of defendants.

The mere fact of the institution of the first suit is not a conclusive election between inconsistent rights or remedies unless there is a benefit to plaintiff or harm or detriment to the defendants, and does not constitute a bar.

In the case of Seaman's Oil Co. v. Guy, 115 Tex. 93, 276 S.W. 424, 426, the Court stated the rule to be:

"The rule applicable to election is stated in 10 R.C.L. 703, 704, as follows:

"'If one having a right to pursue one of several inconsistent remedies makes his election, institutes suit, and prosecutes it to final judgment or receives anything of value under the claim thus asserted, or if the other party has been affected adversely, such election constitutes an estoppel thereafter to pursue another and inconsistent remedy. And where the right in the subsequent suit is inconsistent with that set up in the former suit, as distinguished from a merely inconsistent remedy, the party is estopped though the former suit may not have proceeded to judgment. But where the inconsistency is in the remedies it is generally considered that there is no estoppel where the former suit was dismissed without trial or before judgment.'"

The Court by way of dicta made a further statement as follows:

"However, there is conflict in the authorities as to whether under all circumstances the mere filing of a suit, which is not prosecuted to judgment, based on an inconsistent cause of action, is an irrevocable election to rely on the remedy being sought, and a complete bar to an action thereafter filed seeking relief which is repugnant to that claimed in the former suit. A decision of the question here presented does not require a holding that such bar would or would not result."

The Court stated:

"This conduct (the repudiation of their contract and the institution of suit to cancel) cast a cloud upon the title to the leasehold interest which they had conveyed. It would be shocking to a sense of justice to hold that after they had, by such conduct as is shown in this case, destroyed or seriously impaired the value of the property conveyed by them, they could recover the consideration for same under the terms of the contract."

Buckner v. Eubank, Tex.Civ.App., 131 S.W.2d 1099, no writ history; Gillette Motor Transport Co. v. Whitfield, Tex.Civ. App., 186 S.W.2d 90, error ref., w.m.; Mosher Mfg. Co. v. Eastland W. F. & G. R. Co., Tex.Civ.App., 259 S.W. 253, error ref.;

Autocar Sales & Service Co. of Missouri v. Holscher, Mo.App., 11 S.W.2d 1072; In re Rose, D.C., 39 F.2d 242.

We have given careful consideration to the complete and comprehensive briefs and authorities set out and cited by both appellant and appellees, and conclude that the appellant is not estopped to have a trial on his present case by the filing of the Spikes suit on which no trial was had and which was dismissed prior to the entry of the judgment complained of.

The judgment of the trial court is reversed and the cause remanded to the trial court.

Reversed and remanded.