EASTLAND COUNTY v. CHAPMAN, Com'r of Insurance and Banking, et al.*
(No. 531—4214.)

(Commission of Appeals of Texas, Section B. Oct. 28, 1925.)

1. **Banks and banking** ⬅️15—"Depositors" protected under guaranty fund.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 486, for one to be protected by depositors' guaranty fund, he must have been an unsecured noninterest-bearing depositor in bank which failed at time commissioner of insurance and banking took possession of it.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Depositor.]

2. **Banks and banking** ⬅️15—Deposit may be changed to unsecured, noninterest-bearing class without payment to depositor and redeposit.

One whose deposit is carried by state bank on security or at interest may, by agreement with bank, change nature of deposit within Vernon's Sayles' Ann. Civ. St. 1914, art. 486, by transferring it to unsecured noninterest-bearing class without actual repayment to depositor and redeposit with bank by him, provided bank be solvent at the time and able to make payment.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*See opinions on rehearing and to correct judgment entry, 277 S. W. 629, 278 S. W. 425.

3. **Equity** ☞57—Fiction that equity treats that which ought to have been done as done never applied to perpetrate wrong.

Equitable fiction that law treats that which ought to have been done as having been done is applied to prevent wrong, but never applied to perpetrate it.

4. **Banks and banking** ☞15—Treating transaction as equitable payment by bank and redeposit held to be fraud on contributors to depositors' guaranty fund.

Where on July 12 state bank was unable to pay county amount of its debt, and therefore county was unable to make actual deposit to unsecured deposit account, within Vernon's Sayles' Ann. Civ. St. 1914, art. 486, attempt will not be treated as having been completed on any fiction to do equity, since to treat transaction as equitable payment and redeposit would be fraud on contributors to depositors' guaranty fund.

5. **Banks and banking** ☞15—County funds held not protected by depositors' guaranty fund after attempted transfer to noninterest-bearing account.

Where on July 12 state bank was insolvent and unable to pay to county amount of its indebtedness on secured deposit account, and therefore county was unable to make actual deposit to unsecured account, attempt so to transfer funds *held* not to entitle county to protection of depositors' guaranty fund.

6. **Banks and banking** ☞15—County funds deposited in state bank after agreement held within depositors' guaranty fund.

Where state bank on July 12 agreed to transfer county funds from interest-bearing deposit to unsecured noninterest-bearing deposit, funds deposited by county thereafter *held* within Vernon's Sayles' Ann. Civ. St. 1914, art. 486, providing for depositors' guaranty fund; fact that bank was insolvent at time of subsequent deposits not affecting status of such deposits.

7. **Banks and banking** ☞15—Liability of depositors' guaranty fund depends on status of deposit.

Liability of depositors' guaranty fund is not matter of agreement between depositor or state bank and commissioner of banking, but is fixed by law, and depends on status of deposit for which indemnity is sought, and if deposit is made within Vernon's Sayles' Ann. Civ. St. 1914, art. 486, depositor is entitled to indemnity from fund.

8. **Banks and banking** ☞15—Unsecured funds of county held "deposits" within depositors' guaranty fund law.

In view of Vernon's Sayles' Ann. Civ. St. 1914, art. 448, and article 486, as amended by Acts 38th Leg. 1923, c. 45, depositor of county funds in state bank on noninterest-bearing basis *held* unsecured deposit and entitled to protection of depositors' guaranty fund.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Deposit.]

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by Eastland County against J. L. Chapman, Commissioner of Insurance and Banking, and others. Decree for plaintiff was reversed in part and rendered and affirmed in part by the Court of Civil Appeals (260 S. W. 889), and plaintiff brings error. Judgments of trial court and Court of Civil Appeals reversed, and judgment rendered for plaintiff, with order.

Burkett, Orr & McCarty, of Eastland, Bailey, Nickels & Bailey, of Dallas, and Cofer & Cofer, of Austin, for plaintiff in error.

W. A. Keeling, Atty. Gen., and John W. Goodwin and Walace Hawkins, Asst. Attys. Gen., and Conner & McRae, of Eastland, for defendants in error.

SPEER, J. This proceeding involves a construction of certain articles of our bank deposit guaranty law upon a writ of error granted to the decision of the Court of Civil Appeals for the Eighth district (260 S. W. 889), reversing and rendering in part and affirming in part the judgment of the district court of Eastland county. The suit was instituted by Eastland county against the Security State Bank & Trust Company, the commissioner of insurance and banking, and J. R. Burnett, special agent of the commissioner, to establish as a general deposit certain of its county and school funds, and to have them classified as claims entitled to be paid out of the depositors' guaranty fund. The trial court held outright for the plaintiff as to the entire amount sued for, being $629,847.42; while the Court of Civil Appeals affirmed the judgment generally, but reversed and rendered in the particular wherein it was ordered to be paid out of the depositors' guaranty fund of the state. The Court of Civil Appeals found the following facts:

"(1) On February 14, 1921, the commissioners' court of Eastland county designated the Security State Bank & Trust Company as the county depository, and said bank entered into bond as required by law.

"(2) On April 14, 1921, one of the sureties on the bank's bond presented his application to be released, and the commissioners' court entered an order requiring the Security State Bank & Trust Company to make a new bond, which was tendered and accepted on April 14, 1921.

"(3) Subsequent to the approval of the new bond on April 14, 1921, several of the sureties suffered heavy financial losses. As a result, negotiations between the county judge, representing Eastland county, and the officials and directors representing the bank, the commissioners' court made its order and notified said Security State Bank & Trust Company that said bond was not sufficient, and required said bank to make a new bond.

"(4) In reply to this notice, said Security State Bank & Trust Company, through its duly authorized officers, wrote the letter offered in evidence, by which it was agreed that

the county deposits should be placed upon guaranty fund until a satisfactory depository bond should be furnished.

"(5) The letters show clearly the nature of the agreement. By inadvertence the formal order was omitted from the minutes of the commissioners' court. As soon as this omission was discovered, the order was entered nunc pro tunc. There is not a bit of evidence impeaching this record (if indeed it is permissible to impeach it here collaterally). The testimony conclusively shows that the order expresses exactly the transaction. Even without the nunc pro tunc entry the letters speak for themselves, and show that the commissioners' court agreed with the bank to place the county's funds in a general deposit, unsecured, and noninterest-bearing, until the legal demand of the commissioners' court for a sufficient depository bond might be complied with by the bank.

"(6) There is no proof that either the bank or the county contemplated a fraud against the guaranty fund. Mr. Hunt, the active vice president of the bank, wholly fails to disclose any such intent. The evidence absolutely acquits the county officials of any fraud or knowledge of the condition of the bank.

"(7) The public generally had no notice of the condition of the bank, which was receiving deposits daily. The county relief upon its agreement with the bank, and subsequent thereto deposited $85,557.83 in the bank, some of it the very day before the bank closed.

"(8) On August 2, 1921, said Security Bank & Trust Company closed, and its affairs went under the control of the commissioner of insurance and banking. Eastland county at the time had in said bank (as shown by the accounts, the pages of the general deposit ledger) the sum of $556,535.15; and $73,312.27—total, $629,847.42, as sued for.

"(9) These claims were filed in due time and form with the commissioner of insurance and banking as unsecured, noninterest-bearing deposits, and the claims were refused."

To these facts should be added the following:

The notice referred to in finding (3) was by letter written by the county judge of Eastland county of date July 12, 1921, and the reply referred to in finding (4) was by the Security State Bank & Trust Company through its vice president by letter of same date, the notice and reply being as follows:

"July 12, 1921.

"Security State Bank & Trust Company, Eastland, Texas— Gentlemen: Whereas, at the regular June term, A. D. 1921, of the honorable commissioners' court of Eastland county, Texas, the Security State Bank & Trust Company was duly selected as county depository; and whereas, on June 3, A. D. 1921, at the May 30th meeting of said court, the same being in the May term of said court, the court approved the depository bond of said bank with the following sureties, C. T. Berringer, R. E. Mullin, R. A. Hodges, M. H. Smith, R. L. Hunt, Joe Burkett, and Allen Dabney; and whereas, subsequent to the approval of said bond banks at Ranger, Texas, in which Mr. J. S. Mullin, R. A. Hodges and M. H. Smith were in divers ways heavily interested, failed, the court is of the opinion that said bond is now insufficient:

"Now, therefore, the commissioners' court of Eastland county, Texas, finds that said bond is insufficient, and you are notified to tender said court a good and sufficient bond, and that the funds belonging to said county will be immediately withdrawn unless the same is placed in a noninterest-bearing account protected by the state guaranty fund.

"R. C. Starnes, County Judge."

The reply of the bank was as follows:

"Eastland, Texas, July 12, 1921.

"Honorable Commissioners' Court, Eastland County, Courthouse, City—Gentlemen: We acknowledge receipt of your letter of even date wherein you state that in the opinion of the members of the court that the bond of this bank securing the payment of Eastland county funds is inadequate, and that we proceed to make another bond. This is to advise you that we will secure just such a bond as your body will deem adequate, and in the meantime we have placed the funds of this county on a noninterest-bearing basis, which deposit under the terms of the banking laws is protected by the depositors' guaranty fund of the state of Texas.

"Yours very truly,
"R. L. Hunt, Vice President."

Upon the date these two letters were written it is undisputed that the Security State Bank & Trust Company was hopelessly insolvent. Under these facts, the questions arise, first, was Eastland county a depositor in the Security State Bank & Trust Company, within the protection of the depositors' guaranty fund as to the total of $629,847.42; and, if not, second, was Eastland county entitled as such depositor to protection for payment out of that fund as to the $85,557.83 deposited after the agreement above referred to? We are of the opinion the first question should be answered, "No," and the second one, "Yes."

Article 486, c. 5, tit. 14, Vernon's Sayles' Texas Civil Statutes, controlling the question is:

"In the event the commissioner of insurance and banking shall take possession of any bank or trust company, subject to the depositors guaranty fund plan of this chapter, as herein provided, the depositors of said bank or trust company, as specified in article 448, shall be paid in full out of the cash in said bank or trust company that can be made immediately available from such bank; and the remainder shall be paid out of the depositors guaranty fund through the said board, in the event the cash available in said institution shall be insufficient; provided, that deposits upon which interest is being paid, or contracted to be paid, directly or indirectly by said bank, its officers or stockholders, to the depositor and deposits otherwise secured, shall not be insured under this chapter, but shall only receive the pro rata amount which may be realized from the assets, resources and collections of and from such banks and trust companies, its stockholders or directors."

[1, 2] First, it is apparent, for one to be protected by the depositors' guaranty fund provided in that chapter, he must have been one of the "depositors" in such failed bank at the time the commissioner of insurance and banking shall have taken possession of it, and, moreover, "deposits upon which interest is being paid, or contracted to be paid, directly or indirectly by said bank, its officers or stockholders, to the depositor, and deposits otherwise secured" are not embraced within the protection of the guaranty fund. It is, of course, not contended that Eastland county was such a depositor entitled to protection of the guaranty fund under the original arrangement with the Security State Bank & Trust Company as its depository, but the contention is, after the agreement of July 12, the county's status was changed from that of owner of a secured interest-bearing deposit to that of an unsecured, noninterest-bearing depositor within the contemplation of the statute.

In Middlekauff v. State Banking Board, 111 Tex. 561, 242 S. W. 442, the Supreme Court, through Mr. Justice Greenwood, held that a depositor who had an open, unsecured, noninterest-bearing account in a bank, upon which account he had drawn his personal check, receiving therefor a cashier's check, which had not been paid when the bank failed, was a "depositor" entitled to the protection of the guaranty fund, the court saying:

"Since it plainly appears that the transaction between relator and the bank did not discharge the bank's obligation to relator as a general depositor, entitled to the benefits of the guaranty fund, such transaction presents no obstacle to his maintenance of this suit."

In Kidder v. Hall, 113 Tex. 49, 251 S. W. 497, Chief Justice Cureton defines a depositor to be "one who delivers to or leaves with a bank money, or checks or drafts, the commercial equivalent of money, subject to his order, and by virtue of which action the title to the money passes to the bank," the Chief Justice saying:

"The law will look through all semblances and forms to ascertain the actual fact as to whether or not there has been a bona fide deposit made, and, if not, the guaranty fund does not protect the transaction, no matter how it may be evidenced. The guaranty fund does not guarantee the integrity of the evidences of a deposit, such as a certificate, but only the deposit itself."

The relator's claim in that case was based upon a purchase of a draft or bank's check from the state bank prior to its failure.

The case of State Banking Board v. Pilcher, 270 S. W. 1004, by the Commission of Appeals, Section A; is even more helpful in determining the question before us. There, as here, the deposit had been with the state bank upon an interest-bearing basis and the parties—that is, the bank and the depositor

—after the bank had become insolvent, undertook to change the deposit from an interest-bearing to a noninterest-bearing one. It was held the attempted change did not create the relation of depositor and bank within the meaning of the State Banking Act, so as to entitle the claimant to the protection of the guaranty fund. The court there says:

"At the time when Pilcher and the officers of the bank attempted to change the character of the deposit, the insolvency and contemplated insolvency had already fixed the status of the creditors of the bank as to which funds they could look to for payment, and the status of the holder of an interest-bearing time deposit certificate was such, under the provisions of article 486, Revised Civil Statutes, that he could not participate in the guaranty fund, and any attempt at that time to change the relation of the creditor toward the guaranty fund came too late, and must be treated as a fraud on that fund and therefore void."

And the case of Turkey State Bank v. Estelline State Bank, 272 S. W. 775, by the same section of the Commission, after quoting Chief Justice Cureton's definition of a depositor, again held with the holding in the Pilcher Case that such attempted change by a depositor from an interest-bearing deposit to a noninterest-bearing deposit at a time when the state bank was insolvent would not create the status of "depositor" so as to entitle one to the benefits of the guaranty fund—that such attempted change, if given effect, would operate as a fraud.

In motion No. 6062 in the Supreme Court, John Rinehart sought leave to file his petition for writ of mandamus to compel the state banking board and the commissioner of insurance and banking of Texas to pay relator's claim as a depositor out of the depositors' guaranty fund, his petition showing that on the 9th day of November, 1922, the Security State Bank of Fort Worth, an institution doing business and protecting depositors under the depositors' guaranty fund, failed, and was taken in charge of the commissioner of insurance and banking of Texas for the purpose of liquidation; that prior to such failure the petitioner became the owner and possessor of a certain check drawn by Sherwin & Schwartz upon said Security State Bank of Fort Worth in the sum of $1,200; that at the time the makers of said check were depositors in the bank, having therein an unsecured noninterest-bearing deposit and credit in an amount equal to or exceeding said check; that petitioner presented the check to the Security State Bank for payment, and the cashier of the bank then and there accepted the same for payment while the bank was yet a going concern, and while the said deposit of Sherwin and Schwartz was a live, active, unsecured noninterest-bearing deposit, and then and there the cashier issued and delivered to the petitioner the cashier's check of said bank for the sum of $1,200; and that said

cashier's check was thereafter dishonored because of the bank's failure. The petition disclosed that the facts were undisputed, and sought the mandatory order of the court to enforce payment out of the depositors' guaranty fund. The application and the motion for leave to file were overruled November 28, 1923, without written opinion.

[3, 4] It may be conceded that one whose deposit is carried by a state bank upon security or at interest may by mere agreement with the bank change the nature of the deposit by transferring it to the unsecured noninterest-bearing class, without the actual repayment to the depositor and redeposit with the bank by him, provided the bank be solvent at the time and able to make such actual payment, and the depositor therefore able to make such actual deposit. This is upon the conception that the law upon equitable considerations will treat that which ought to have been done as having been done. But this fiction will never be permitted where the thing that ought to have been done could not have been done. This principle of equity is applied to prevent a wrong, and will never be applied to perpetrate a wrong. For the courts to treat a transaction such as is under consideration here as an equitable payment and redeposit would be clearly a fraud upon the numerous banks and institutions contributing to the guaranty fund of the state, and, it being undisputed that on July 12, 1921, the Security State Bank & Trust Company was unable to pay to Eastland county the amount of its indebtedness, and therefore the county was unable to make an actual deposit to the unsecured deposit account, the law will not treat the attempt to make such transfer as having been completed upon any fiction to do equity.

[5] It is clear to us that Eastland county cannot be treated as a depositor entitled to the protection of the depositors' guaranty fund because of the attempted arrangement between it and the bank to transfer the account from a secured, interest-bearing deposit to the unsecured noninterest-bearing deposit. For this reason, rather than for the reasons given by the Court of Civil Appeals, we approve the conclusion of that court as to those deposits made prior to the attempted agreement. It is needless for us to discuss or decide what would be the rights of the county if its commissioners, contrary to the scheme and plan provided by law for the deposit of the county funds, were actually to make a deposit of such funds in a state bank under such circumstances as would entitle an ordinary depositor to the protection of the guaranty fund provided by law.

[6, 7] As to the sum of $85,557.83 which the county deposited in the Security State Bank & Trust Company after the agreement of July 12, we think the plaintiff in error comes literally and altogether within the contemplation of the statute, and is entitled to have its judgment to this extent paid out of the depositors' guaranty fund provided by law. The liability of this fund is not a matter of agreement or contract in any wise between a depositor or the state bank and the commissioner of banking, but the liability of that fund is fixed by law, and it depends upon the status of the deposit for which the indemnity is sought. If a deposit be made within the terms of article 486, the depositor is by force of law entitled to indemnity from the fund. The Legislature has not seen fit until quite recently to protect that fund in any wise against the insolvency of the bank member who takes unsecured noninterest-bearing deposits. And the statute as it existed at the time the rights of the parties in this case were fixed protects depositors at the time the commissioner of insurance and banking shall have taken possession of the failed bank, without regard to the time when such deposits were made. The insolvency of the Security State Bank & Trust Company at the time plaintiff in error made the deposit of $85,-557.83 does not alter the fact nor affect the law that Eastland county was an actual depositor on a noninterest-bearing unsecured account in that bank on the date of its failure. The insolvency of the bank did operate, as we have shown, to prevent the courts' treating the agreement for a transfer of the deposit as an actual deposit, but such fact of insolvency cannot have the effect to deprive the county of the benefit of the protection of the fund to the extent of $85,557.83 actually deposited—not under the original depository agreement, but as an unsecured noninterest-bearing deposit. To deny a recovery to the county as to this item against the fund upon the ground of the insolvency of the bank would be for us to write into the statute that which the Legislature has not placed there. All parties have been found to have acted personally in good faith in the matter, and certainly the act of the county in placing its actual funds on such deposit could not be in fact or law a fraud upon any one, and we are unwilling to extend the decisions so far as to hold its act in this respect to be fraudulent and void.

[8, 9] We hold against defendant in error upon his contention that public funds such as those involved in this case were not within the contemplation of the statutes of surety afforded by the depositors' guaranty fund. Article 486, providing for the payment of depositors, makes special reference to article 448. Article 448, in providing a scheme for maintaining the guaranty fund by assessment of member banks, treats United States, state, and other public funds, when not otherwise secured, as being "deposits." The different articles of the act, of course, are to be construed in pari materia, and there is no reason to hold that such unsecured funds may not constitute the unsecured deposit entitled to the protection of the fund. Moreover, the act

of the 38th Legislature, at its regular session, approved February 28, 1923 (Acts 38th Leg. c. 45), amending article 486, so as to provide that any deposit of public funds of any kind or character, whether interest-bearing or not, deposited in a state bank shall not be insured under this chapter, is itself a legislative interpretation of the article as it formerly was to include such deposits.

We approve the holding of the Court of Civil Appeals upon those questions not otherwise decided herein.

We therefore recommend that the judgments of the trial court and of the Court of Civil Appeals be reversed, and judgment be here rendered for plaintiff in error establishing the total amount of its claim as in the trial court, but ordering that no part of the same shall be paid out of the depositors' guaranty fund save the sum of $85,557.83, which shall be a charge against this fund.

GREENWOOD and PIERSON, JJ. Judgments of the district court and Court of Civil Appeals reversed, and judgment here rendered for plaintiff in error establishing the total amount of its claim as such amount is established by the trial court, but ordering that no part of same be paid out of the depositors' guaranty fund save the sum of $85,557.83, as recommended by the Commission of Appeals.

CURETON, C. J., not sitting.