### KOPECKY et al. v. CITY OF YOAKUM.
#### No. 1581—5943.

Commission of Appeals of Texas, Section A.
July 19, 1932.

H. W. Wallace, of Cuero, Durell Miller, of Yoakum, and Walter F. Brown, of Houston, for plaintiffs in error.

Green & Green, of Cuero, and Leslie C. Merrem, of San Antonio, for defendant in error.

CRITZ, J.

The Court of Civil Appeals makes a very comprehensive statement of the facts and issues of this case, and, in the interest of brevity, we adopt the statement of that court. We will, however, in the course of this opinion, make such further statement as is necessary to make our holdings clear.

This suit was instituted in the district court of De Witt county, Tex., by the city of Yoakum against Yoakum State Bank, James Shaw, state banking commissioner, and the sureties on several depository bonds of the bank. Trial in the district court resulted in an instructed verdict for the city, and judgment was entered in accordance therewith for the city and against the bank and all sureties not theretofore dismissed on account of bankruptcy in the sum of $83,-807.56, with 6 per cent. interest from the date of judgment. The judgment finally disposed of all parties and all issues. Kopecky and certain other sureties on the depository bonds sued on appealed to the Court of Civil Appeals at Galveston, which court affirmed the judgment of the district court. 35 S.W.(2d) 492. Kopecky et al., sureties, bring error.

It seems that Yoakum State Bank was the duly selected depository of the city of Yoakum for the year ending June 30, 1928. On June 20, 1928, the bank, as principal, and Kopecky et al., who are here appealing, and certain other parties, signed a new bond for the bank to again act as city depository for the year extending from June 30, 1928, to June 30, 1929. This bond was duly accepted and approved by the city.

On June 30, 1928, the city had on deposit in the bank the sum of $62,000 belonging to the general fund; the sum of $27,994.98 belonging to the special sewer fund; and the sum of $31,841.50 belonging to the special street improvement fund.

The bank continued to act as depository for the city until September 5, 1928, when it was closed by the state banking commissioner on account of being insolvent. During the months of July and August, 1928, and up to the date the bank was closed, the city deposited therein the sum of $12,499.84, and during such time withdrew the sum of $41,755.58. This left the bank owing the city at the time it was closed the sum of $93,119.52.

After the bank was closed, the city realized in dividends paid by the banking commissioner the sum of $9,311.95, leaving a net balance due the city of $83,807.57. This last sum is the amount of the judgment here complained of.

From the statement we have made it appears that, when the bond covering the year ending June 30, 1929, became operative, the city already had on deposit in the bank a very large sum of money which had been placed there under prior depository bonds.

By proper assignments, plaintiffs in error contend that they, as sureties on the bond for the year ending June 30, 1929, are not liable for the money on deposit prior to the taking effect of that bond, because the bank was already insolvent at such time, and the city could not have withdrawn the funds it already had on deposit in the bank, for the reason that the bank would have been unable to pay it. We overrule this contention. It is the settled law of this state that the new bond covers "not only funds subsequently deposited, but those already deposited, as well." Linz v. Eastland County, 39 S.W.(2d) 599, 607, 77 A. L. R. 1466. (Tex. Com. App. opinion approved). We know of no rule of law that makes an exception to the above rule, because the bank is insolvent or unable to pay in cash when the new bond takes effect. Insolvency in fact is usually a very uncertain question, and many solvent banks are unable to pay out large sums of money on short notice. The bond in question here is not conditioned on the solvency of the bank, or its ability to pay out all funds in a lump sum, but, according to the terms of article 2560, R. C. S. 1925, is: "* * * And conditioned for the faithful performance of all duties and obligations devolving by law or ordinance upon said depository, and for the payment upon presentation of all checks drawn upon said depository by the city treasurer, whenever any funds shall be in said depository applicable to the payment of said check, and that all funds of the city shall be faithfully kept by said depository, and with the interest thereon accounted for according to law; and for a breach of said bond, the city may maintain an action in its name."

Certainly the above statute does not contemplate that public funds in official depositories are in so hazardous a position as to be subject to the defense of insolvency by those who have undertaken to guarantee their safe-

ty. At least plaintiffs in error have cited us to no authority so holding.

■ Plaintiffs in error contend that the case of Eastland County v. Chapman (Tex. Com. App.) 276 S. W. 654, is authority for their contention on the question under discussion. The case last cited involved the effort on the part of Eastland county to transfer its funds, by a mere entry on the books of the official depository bank, from a secured and interest-bearing deposit to an unsecured and non-interest-bearing deposit, so as to bring such funds under the protection of the then bank guaranty fund of this state. It was shown that at the time the transfer on the books was made the bank was insolvent and unable to pay the county its money in cash. Under such a record, it was very properly held that the mere transfer of the fund on the books of the bank did not entitle the county to the protection of the guaranty fund. We see no similarity in the issue here involved and the issues involved in Eastland County v. Chapman, supra. Here we have a statutory bond, the liability on which is fixed by the statute. Under the statute, the bank was liable to the city of Yoakum for all funds here involved. The sureties, by signing the bond, stood good to the city that the bank would discharge its duties and liabilities as defined by law. It follows that, where the bank is bound, the sureties are also bound. Certainly such a case is in no way akin to a case where a depositor tried to shift, by a mere entry on the books, a secured and interest-bearing deposit to an unsecured and non-interest-bearing deposit for the purpose of bringing same under the bank guaranty fund.

■ Plaintiffs in error pleaded as a defense in the trial court that they are not liable on the depository bond for the term ending June 30, 1929, because the city was guilty of fraud in taking it. The pleading in regard to this matter, in substance, charges in general language that, at the time the last bond was executed by the plaintiffs in error, as sureties for the bank, the bank was wholly insolvent, and that its redesignation as a depository for the city was part of a fraudulent scheme to saddle the loss of the city's funds then in the bank on innocent bondsmen. The trial court sustained certain special exceptions to the above pleading of fraud, and plaintiffs in error refused to amend. We think this matter presents no error. In the first place, the pleading charges no overt or active act of fraud, but merely charges that the bank was insolvent, and that the redesignation was in furtherance of a fraudulent scheme to saddle the loss on innocent bondsmen. It is not charged that the city committed any affirmative fraudulent act, or made any fraudulent or false representations to any of these sureties. At best, the pleading is sufficient only to charge that the officers of the city charged by law with the taking and approving of this bond knew that the bank was insolvent, and failed to communicate that fact to these sureties. We think such is not a defense for sureties on a depository bond. City of Hallettsville v. Long et al., 11 Tex. Civ. App. 180, 32 S. W. 567; Mathis, Sheriff, v. Morgan, 72 Ga. 517, 53 Am. Rep. 847.

In the Long Case, supra, Judge Williams, then a member of the Court of Civil Appeals at Galveston, later a very distinguished member of the Supreme Court, exhaustively reviewed the authorities touching the defense of fraud by sureties on official bonds, and held that the fact that municipal authorities charged by law with the duty of taking and approving official bonds knew that a public officer was already in default with the city, and failed to communicate that fact to those intending to become sureties on the new bond for such officer, and who even falsely represented to the new bondsmen that such officer was not in default, did not void the sureties' liability on the new bond.

The reasons for the rule announced by Judge Williams in the Long Case, supra, and by the authorities in general, are that those who act in taking and approving official bonds do so as public officials, and within the narrow limitations prescribed and defined by law, for the benefit of all the people. The duties of such officers and their limitations are well known to those who sign official bonds, and for that reason they sign at their own risk and on their own initiative. We quote and adopt the following from Judge Williams' opinion in the Long Case, supra:

" * * * In this case it is held that mere concealment by, or failure of the obligee to communicate to the sureties facts known to him, but unknown to them, which show the moral unworthiness of the principal for the proposed trust, may be a fraud upon the sureties which will constitute a defense. That principle is declared as applicable to cases where the obligee is contracting for himself either in person or by agent. His contract is such as he makes it, and is affected by all infirmities which result from his or his agent's conduct. It is not so with officers of public corporations, whose duty it is made by law to pass upon the sufficiency of the bonds of other officers. They usually act in the performance of duties imposed by the statute for the benefit of the people of the municipality. While for some purposes they are agents of the public, they are agents whose duty and authority are defined and limited by law. The nature of their duties and the extent of their authority are made known by the law to persons dealing with them. When the law requires of an officer the execution of a bond of a certain character, and makes it the duty of other officers to see that it is given, and pass upon its suffi-

ciency, no authority is given them to change its nature or impair its efficiency when given, by any stipulations or representations they may see fit to make. In substance and effect such a bond is given to the public composing the corporation. The officers representing it are not the obligees, and cannot control the effect of the bond, because their function is fixed by the laws on the subject. Hence sureties who sign such a bond are not in the attitude of persons who sign as sureties for the performance of a private contract. They in fact make no contract with the officers representing the public, but assume an obligation to the public body, the effect and extent of which is regulated by law."

By proper assignments plaintiffs contend that they are not liable on this bond because there was a secret agreement between the city and the bank that the relationship between them should not be as prescribed by law, and as provided in the bond which they signed as sureties. In this connection the plaintiffs in error pleaded that a large part of the funds of the city were never deposited in the bank, but were deposited in other banks with the consent of the depository bank and by agreement between it and the city. It seems that the trial court sustained the city's special exceptions to the above pleading. Plaintiffs in error contend that the matters so pleaded constitute such a novation and violation of the contract by the city as to release them as sureties on the bond. We overrule these assignments for the reasons we shall now proceed to give.

In the first place, if, under the law, the bank was entitled to receive the deposits diverted to other banks, and it was illegal for the city to withhold them from the depository bank, then the agreement between the city and the depository bank was void as an agreement, and amounted to no agreement at all. It therefore could not operate to novate the bond as a contract. Sullivan v. City of Galveston (Tex. Com. App.) 34 S.W.(2d) 808.

In the second place, if the city failed to deposit funds in the depository bank in violation of law, still such failure could not operate to release the sureties on the bank's depository bond. Our statute, article 2561, R. C. S. 1925, provides a penalty of ten per cent. per month on any amount not deposited for failure of the city treasurer to make deposits in a city depository as required by law. This penalty is payable to the bank, and the treasurer and his bondsmen are liable therefor. This law by its very terms negatives the contention of plaintiffs in error. It is surely not contemplated that a depository bank can demand and recover a 10 per cent. penalty per month for all such moneys withheld from it, so long as they are so withheld, when the very instance of withholding has completely discharged the city's security for such money, if it is afterwards deposited in the bank.

Finally, we call attention to the fact that the undisputed record in this case shows that these sureties are here complaining of a matter which, if true, resulted in a benefit to them to the extent of every dollar not deposited in this bank. In other words, had the thousands of dollars deposited by the city in other banks been deposited in this bank, the liability and loss of these sureties would have been increased by just the amount so deposited in the other banks.

We have carefully examined all assignments contained in the application for the writ, and in our opinion the district court and Court of Civil Appeals have correctly disposed of this case.

We recommend that the judgments of the Court of Civil Appeals and district court be both affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.