

# The Attorney General of Texas

December 28, 1978

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main, Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable George W. McNiel
State Auditor
Sam Houston State Office Building
P. O. Box 12067
Austin, Texas 78711

Mr. Burt L. Risley
Executive Director
State Commission for the Blind
P. O. Box 12866
Austin, Texas 78711

Opinion No. H- 1309

Re: Transaction between
public entities and private
nonprofit foundation created
for the public entity's benefit
or for the provision of similar
services.

Gentlemen:

Mr. McNiel asks several questions about the authority of officers and employees of a public entity to hold management positions with an affiliated nonprofit foundation. Mr. Risley inquires whether employees of the Commission for the Blind may serve in an advisory or management capacity with a private nonprofit organization serving blind individuals, and in addition inquires about the loan of surplus property to such organizations.

Mr. McNiel's first question is as follows:

> May members of the governing board or other officers or employees of a public entity, such as a state agency, institution or school district, serve in similar management or decision making positions with a private nonprofit foundation or organization that is affiliated with the public agency or institution?

We find no constitutional provision or statute which absolutely bars such employment. Prohibitions against dual office holding or incompatible employments apply only to dual public employments. See Tex. Const. art. 16, §40; Letter Advisory No. 87 (1974). Of course, the statutes of each agency or institution must be consulted for any prohibitions specific to that agency. See e.g., V.T.C.S. art. 3207b (paid employees of agencies serving

the blind not eligible to serve on Board of State Commission for Blind). However, as our discussion of the remaining questions will show, public policy severely limits the ability of a public entity to contract with a private entity when the same persons serve in management positions on both. Thus, while one person technically may serve in both capacities, the conflicts of interest thereby raised will often prevent him from acting in both capacities as a practical matter. We also draw your attention to section 8(b) of article 6252-9b, V.T.C.S. which provides that a state officer or employee should not accept other employment for compensation which might impair his independence of judgment in the performance of his official duties. Whether a particular employment violates this provision is a fact question, to be decided by his superior in the first instance. Attorney General Opinions H-1223 (1978); H-614 (1975).

Mr. McNiel then asks a series of specific questions about transactions between a public entity and private organizations in cases where one person serves both in a management position. He asks:

> May the public entity contract with the private foundation or organization? Does it matter whether the public entity receives a quid pro quo under the contract?

Public officers may not have a direct or indirect pecuniary interest in a contract entered into by the agency or political subdivision they serve. Meyers v. Walker, 276 S.W. 305 (Tex. Civ. App. — Eastland 1925, no writ); see City of Edinburg v. Ellis, 59 S.W.2d 99 (Tex. Com. App. 1933, holding approved).

This policy applies to contracts between a public entity and an affiliated private entity established to benefit it. See Attorney General Opinion M-714 (1970) (City councilman is "interested in" contract with non-profit community action agency established to assist city). In Meyers v. Walker, the court stated:

> If a public official directly or indirectly has a pecuniary interest in a contract, no matter how honest he may be, and although he may not be influenced by the interest, such a contract so made is violative of the spirit and letter of our law, and is against public policy.

276 S.W. at 307. This policy is founded on the principle "that a man cannot serve two masters . . . . " Dillon on Municipal Corporations, 5th Edition, Vol. 2 at 1140 (cited in Attorney General Opinion M-340 (1969) ). Public contracts in which an officer is interested violate the common law even where no statute prohibits them. Attorney General Opinion M-1236 (1972). Prior opinions of this office have held that public policy prohibits contracts between a school district and an individual trustee, Attorney General Opinion H-734 (1975), between a community center and a corporation in which a school trustee holds stock, Attorney General Opinion M-1236 (1972), and between a county and a farmer's cooperative in which a county commissioner owns shares, Attorney General Opinion H-624 (1975). Attorney General Opinion H-916 (1976) held that a school district could not contract with a company that employed a school trustee in a managerial capacity, even though he received no direct financial benefit from the transaction. It quoted a California court which dealt with similar facts:

> . . . upon the success of [the] business financially primarily depends the continued tenure of his position and the compensation which he receives for performing the service required of him.  Stockton Plumbing & Supply Co. v. Wheeler, 229 P. 1020, 1024 (Cal. Dist. Ct. App. 1924).

See Miller v. City of Martinez, 82 P.2d 519 (Dist. Ct. App. Cal. 1938); cf. Crystal City v. Del Monte Corporation,463 F.2d 976 (5th Cir.), cert den., 409 U.S. 1023 (1972) (public officer's employment with contractor does not invalidate contract as a matter of law).

Closely related to the policy against public contracts in which one of the contracting officials has a pecuniary interest is the policy against dual agency.  An agent may not represent the opposing party in a transaction without the full knowledge and consent of his principle.  Anderson v. Griffith, 501 S.W.2d 695, 700 (Tex. Civ. App. — Fort Worth, writ ref'd n.r.e.); Bute v. Stickney, 160 S.W.2d 302 (Tex. Civ. App. — San Antonio 1942, writ ref'd w.o.m.).  Although this rule has developed in the context of private transactions, we believe it is relevant to the conduct of persons acting as agents of the state.  Like the policy against conflict of interest in public contracts, it guards against competing interests of a public official which would "prevent him from exercising absolute loyalty and undivided allegiance to the best interest" of the governmental entity he serves.  Miller v. City of Martinez, supra.  Public officials are "agents whose duty and authority are defined and limited by law."  Kopecky v. City of Yoakum, 52 S.W.2d 240 (Tex. Com. App. 1932, jdgmt adopted).  In view of the courts' concern about the disinterestedness of public officials as expressed in cases like Meyers v. Walker, supra, we believe they would be reluctant to find the state's consent to its agent's representation of the opposite party in a transaction.  See McLain v. Miller County, 23 S.W.2d 264 (Ark. 1930) (county judge could not contract with himself as representative of both county and owners of land rented by county).

In our opinion, these principles prevent public officials from contracting on behalf of the state or a political subdivision with a private entity which provides them a salary or other benefit.  Even though officers and employees of a nonprofit corporation cannot receive income distributions from it, see V.T.C.S. art. 1396-2.24A, their compensation gives them a pecuniary interest in the corporation and in contracts benefitting it.  See Attorney General Opinion H-916 (1976) (contract between school district and company which employs trustee invalid).  See also Bexar County v. Wentworth, 378 S.W.2d 126 (Tex. Civ. App. San Antonio 1964, writ ref'd n.r.e.) (although commissioner who represented voting machine company received no money from sales to his county, he had indirect interest in such sales).  Moreover, the public entity must receive adequate consideration under the contract in order to avoid making a gift or grant of public funds to a private association in violation of article 3, section 51 of the Texas Constitution.  Dodson v. Marshall, 118 S.W.2d 621 (Tex. Civ. App. — Waco 1938, writ dism'd); Attorney General Opinions H-1260 (1978); H-520 (1975); H-430 (1974).  An officer representing both the state and the private agency in contract formation probably could not disinterestedly judge the adequacy of consideration flowing to the state.

Mr. McNiel also asks:

> May private gifts and grants made to the public entity be remitted to the affiliated foundation or organization?

The agency must first have authority to accept the gift. Attorney General Opinion H-1180 (1978). If it does, the current appropriations act provides that monetary gifts to state agencies shall be appropriated to the agency for the purposes specified by the grantor. Acts 1977, 65th Leg., ch. 872. art. V, §19 at 3155. Such gifts, except for gifts to the Mental Health-Mental Retardation Department, institutions under its jurisdiction, or Article IV institutions, are to be deposited into the State Treasury and expended in accordance with the Act. Article 3, section 51 of the Texas Constitution prohibits the grant of public monies to any association or corporation unless the transfer serves a public purpose and adequate contractual or other controls ensure its realization. Attorney General Opinions H-912 (1976); H-445 (1974); H-143 (1973); see Texas Pharmaceutical Association v. Dooley, 90 S.W.2d 328 (Tex. Civ. App. — Austin 1936, no writ) (holding unconstitutional statute authorizing transfer of public funds from Pharmacy Board to private pharmaceutical association). See also Tex. Const. art. 3, §52(a). In order to make a constitutional transfer, the public entity would have to contract with the private foundation or otherwise attach conditions to the gift. Thus, some exercise of contractual authority would usually be necessary to transfer a gift. The fact that the same persons represent both the public and private agencies would prevent the transfer in most instances. However, where the agency has authority to accept a gift earmarked for distribution to a private agency, the public officials could probably carry out the transfer in a purely ministerial capacity. See Allen v. Roach, 292 S.W. 195 (Tex. Com. App. 1927, holding approved). See also Attorney General Opinion M-782 (1971) (distribution of federal grant funds to nonprofit corporations); M-91 (1967).

Mr. McNiel asks:

> May the public entity make grants or gifts to the private foundation or organization? May the officers, or employees of the public entity accept grants or gifts from the private foundation or organization?

A state agency or institution must have express or implied statutory authority to make a gift or grant. See, e.g., Attorney General Opinion C-673 (1966). The requirements of article 3, section 51 must also be satisfied. See also Tex. Const. art. 3, §52(a). We believe the circumstances preventing the public agency from remitting gifts it receives to the private agency would also prevent it from making such gifts.

Article 6252-9b, V.T.C.S., bars state officers and employees from accepting gifts, favors or services that might influence them in the discharge of official duties. Sec. 8(a). The acceptance of personal gifts by state officers and employees raises the possibility of a violation of this provision; however, whether a violation has occurred is a

fact question for the agency to resolve in the first instance.   If the public entity has authority to accept gifts or grants, see Attorney General Opinions H-120 (1973); M-1212 (1972), we believe an officer or employee may accept them as a ministerial act on behalf of the entity.  We do not believe the officer's relationship to the grantor would prevent him from accepting such gifts unless conditions attached to the gift require the state to enter into a contract or provide some benefit in return.

Mr. McNiel also asks:

> May the officers or employees of the public entity, as a part of their regular duties, maintain records and solicit funds for the private foundation or organization?  If not, may they do so if the foundation or organization reimburses the public entity for such service?

In our opinion, the activities you describe would constitute a gift of services to a private association subject to the requirements of article 3, section 51.   Adequate consideration for services provided is in some cases necessary to avoid violation of this constitutional provision.   See Attorney General Opinions H-912 (1976); H-416 (1974).  However, we do not see how these services could be provided without the negotiation of a contract between the two entities.   Consequently, we do not believe these services may be provided in cases where the same persons purport to represent both sides of the transaction.   See also Texas Penal Code §31.04(a)(2) (theft of services by diversion to person not entitled to them).

Mr. McNiel asks:

> May the public entity loan or advance funds or any other thing of value to the private foundation or organization?  May the public entity borrow funds or any other thing of value from the private foundation or organization?

Specific provisions relating to the agency or institution must of course be consulted.  See, e.g., General Appropriations Act, Acts 1977, 65th Leg., ch. 872, art. IV, § 11a.i. (colleges shall not borrow money to be repaid out of local funds without specific legislative authorization); Attorney General Opinion H-340 (1974) (authority of State Bar to borrow money to finance bar building); V-678 (1948) (school district may not lend funds to another school district).  See also Tex. Const. art. 3, §§ 49, 50.   However, we do not see how either entity may loan or borrow from the other without entering into a contract. Thus, the prohibitions against contracts on the facts posited would also bar loans.

Mr. McNiel asks two more specific questions concerning complex contractual relationships between various parties including the public agency, the private entity, the individual officers, and the federal government.   The public policies we have discussed apply to these transactions, which also must be assessed in light of the relevant Texas and federal laws.   See e.g., Attorney General Opinions H-1272 (1978); H-440 (1974); M-782

(1971). However, since these two questions are contingent upon a finding that the public entity may contract with or make grants to the private entity, we need not further address them.

Mr. McNiel also asks:

> Would the answer to any of the above questions be different if the affiliated nonprofit foundation or organization did not have members of the governing board or officers or employees of the public entity in similar or decision making positions?

This change in facts would remove limitations imposed by the policies against pecuniary conflicts of interest and dual agency. Any prohibitions flowing from the agency's own statutes would remain, see, e.g., Attorney General Opinions H-1272 (1978); H-943 (1977), and compliance with article 3, section 51 of the constitution would still be necessary.

Mr. McNiel's final question is:

> Would the answer to any of the above questions be different if the officers or employees of the public entity received only per diem or actual expenses from the foundation or organization for serving in management or decision making positions with the private foundation or organization?

We cannot say that such persons would have no pecuniary interest in the private foundation. See Attorney General Opinion H-624 (1975) (commissioner's share in farmers' cooperative constitutes pecuniary interest). In addition, such persons would still be placed in the position of representing both the state and the other party to a transaction. Consequently, we do not believe this change in facts would change our answers.

Mr. Risley asks:

> Does Article 6252-9b, V.T.C.S., or any other provision of law prohibit an employee of the Commission for the Blind from serving on an advisory committee to or on the board of directors of a private nonprofit organization chartered and operated for the purpose of providing services to blind individuals, if such employee of the Commission for the Blind receives no direct or indirect pecuniary compensation for his services to the private nonprofit organization?

Section 8(b) of article 6252-9b, V.T.C.S., prohibits a state officer or employee from accepting other employment which might impair his independence of judgment in the performance of his official duties. Whether this provision bars a particular employment is a fact question to be decided by the Commission for the Blind. Attorney General Opinions H-1223 (1978); H-614 (1975).

Article 3207b, V.T.C.S., provides in part:

> No paid employee of any agency carrying on work for the blind shall be eligible for appointment, nor shall any person be eligible to be appointed to serve on the Board of the State Commission for the Blind who is engaged in, associated with, or otherwise representing a business, discipline, profession or trade conducted for the primary purpose of selling or furnishing goods or services of the type provided by the State Commission for the Blind as a significant part of the assistance which the State Commission for the Blind is authorized to extend to eligible individuals. . . .

This would bar board members from being associated with a business or profession furnishing services of the type provided by the commission. A particular nonprofit organization might fit this definition. Article 3207b does not, however, apply to employees of the commission as distinguished from board members.

Finally, the common law policies discussed in answer to Mr. McNiel's question might be relevant to particular transactions between the Commission for the Blind and a nonprofit organization with which a commission employee serves. If there are contractual or other transactions between the commission and the nonprofit foundation, the employee may be placed in the position of representing both parties to a transaction.

Mr. Risley also asks:

> Does Article 6252-6, V.T.C.S., or any other provision of law prohibit the Commission for the Blind from loaning surplus equipment to a closely cooperating, private nonprofit organization that provides services to blind individuals in a manner that complements and supports the Commission for the Blind's service effort in behalf of eligible individuals?

Article 6252-6, V.T.C.S., establishes a system of accounting for state property, to be administered by the Board of Control and the Auditor. Sec. 3(a). The statute does not apply to nonconsumable personal property having a value of $250 or less per unit. It establishes record keeping requirements and provides that state property shall not be entrusted to anyone to be used for other than state purposes. Sec. 5(c). Attorney General Opinion M-623 (1970) construed a prior version of this statute which made the Comptroller and Auditor responsible for administering the property accounting system. The opinion determined that the Comptroller could promulgate regulations whereby certain artifacts owned by Texas Tech University could be loaned or exchanged temporarily with other universities and museums. The opinion stated that the exchange could be accomplished in such a way as to constitute a state purpose.

In our opinion, article 6252-6, V.T.C.S., does not prohibit the Blind Commission from entering into a contract to loan surplus property to private agencies which assist the blind so long as the loan is made for a state purpose and in compliance with regulations issued under the statute. Article 3207c, section 4(a) authorizes the commission to cooperate with private agencies in providing for the vocational rehabilitation of the blind and establishing necessary programs, facilities and services. The commission also has authority under section 2(b) of article 3207a to furnish materials, tools, books, and other necessary apparatus to use in rehabilitating the blind. As a general matter, we believe a loan of surplus property to carry out these provisions would be for a state purpose. Article 16, section 6(b) of the Texas Constitution authorizes state agencies serving the blind to use money from federal and private sources for projects conducted by private, nonprofit organizations and for facilities for the blind. Where a loan of property does not fall within the provisions of article 16, section 6(b), it must comply with the requirements of article 3, section 51 of the Constitution to avoid an unconstitutional gift or grant to any person. We do not comment on a particular proposed transaction, since none has been presented to us. Nor do we consider the impact of any person's conflict of interest or assumption of a dual agency role in such a transaction, except to refer you to our discussion of Mr. McNiel's questions. See also Texas Penal Code §39.01(a)(5) (misapplication of government property).

<u>S U M M A R Y</u>

Officers and employees of a public entity are not absolutely barred from serving as directors of an affiliated private nonprofit foundation. However, where the same persons serve in similar capacities with both agencies, the ability of the state agency to contract or otherwise transact business with the private entity is severely limited by common law principles guarding against conflicts of interest. Whether article 6252-9b, V.T.C.S., prohibits a state employee from working for a private nonprofit organization must be determined on a case by case basis. Article 6252-6, V.T.C.S., does not prohibit the loan of state property to private individuals for a state purpose and pursuant to regulations promulgated under the statute.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jsn